FRED STUDENROTH, Respondent, v. HAMMOND
PACKING COMPANY, Appellant.

**Kansas City Court of Appeals, April 25, 1904.**

1. **MASTER AND SERVANT: Pleading: Allegata et Probata: Amendment.** A petition alleged that a valve was out of order and was allowed to remain so with the master's knowledge but without the servant's. The evidence disclosed that the plaintiff discovered and reported the defect to the master and received a promise to repair, and relying thereon he continued at work. *Held*, a fatal variance, but the petition was subject to amendment under the evidence.

2. ————: **Assumption of Risk: Promise to Repair: Jury.** Where a master promises to repair and the servant does not know but the repair has been made, the rule of the assumption of risk does not apply; and it becomes a question for the jury.

3. ————: **Obvious Defect: Contributory Negligence: Jury.** Mere knowledge that an appliance is defective and that risk is incurred in using it will not as a matter of law defeat the servant's action when the danger is not such as to threaten immediate injury, or it is reasonable to suppose the appliance may with care be safely used, and these are matters for the jury. Steinhauser v. Spraul, 127 Mo. 541, and Devitt v. Railway, 50 Mo. 302, distinguished.

Appeal from Buchanan Circuit Court.—*Hon. W. K. James, Judge.*

REVERSED AND REMANDED.

*Johnson, Rusk & Stringfellow* for defendant.

(1) The demurrer to the evidence should have been given. If the complaining servant reports the defect and receives a promise to repair and relies on it, his assumption of the risk is suspended pending this reasonably requisite time. In order that the rule just

stated shall apply it is necessary that the promise made
by the master should have been the cause which induced
the servant to continue in the employment. If for any
other reason the servant continues in the employment,
the master is not liable for the injuries received. 20
Am. & Eng. Ency. of Law, 128 and cases cited in note 1;
Showalter v. Fairbanks, Morse & Co., 88 Wis. 376.
Rothenberger v. Mill Co., 57 Minn. 461; Meyer v. Mfg.
Co., 67 Mo. App. 389; Flynn v. Railway, 78 Mo. 195;
Stephens v. Railroad, 96 Mo. 207; Thorpe v. Railway,
89 Mo. 650; Lewis v. Railroad, 26 N. E. 431. (2) And
there is the further requirement that the servant must
during the time allowed by the law to the master to
make the repair, exercise such care as is reasonable un-
der the circumstances; and this degree of care must be
increased to correspond to the added danger due to the
defect. Railroad v. Watson, 114 Ind. 20; Railroad v.
Brentford, 79 Tex. 619; Miller v. Min. Co., 18 Utah
358; Bentley on Master & Servant, sec. 3074. (3)
Where the danger becomes so great that no prudent
man would willingly incur it, there being no commen-
surate degree of care, the servant can not continue in
the peril and recover. This is usually a question for the
jury, but this question was not submitted to the jury in
this case, so that this rule furnishes no reason for sub-
mitting this case to the jury. Price v. Railroad, 77 Mo.
508; Porter v. Railroad, 71 Mo. 66; Kleine v. Freunds
& Co., 91 Mo. App. 102; Berning v. Medart, 56 Mo.
App. 443; Devitt v. Railway, 50 Mo. 302; Marshall v.
Hay Press Co., 69 Mo. App. 256; Watson v. Coal Co.,
52 Mo. App. 366; Fugler v. Bothe, 117 Mo. 475; Stein-
hauser v. Spraul, 127 Mo. 541; Roberts v. Telephone
Co., 166 Mo. 370; Beach on Con. Neg. (2 Ed.), sec. 359.
(3) The physical facts are so palpable and conclusive
that he will not be heard to gainsay them. Payne v.
Railway, 136 Mo. 585; Gannon v. Gas Co., 145 Mo. 547;
Lamb v. Railway, 147 Mo. 201; Graney v. Railroad, 157

Mo. 679; Kelsey v. Railroad, 129 Mo. 362; Hayden v. Railroad, 124 Mo. 566; Lane v. Railroad, 132 Mo. 4; Huggart v. Railroad, 134 Mo. 680; Nugent v. Milling Co., 129 Mo. 405; 20 Am. and Eng. Ency. of Law, 120 and cases cited; Bailey on Master & Servant, sec. 3115.

.Charles F. Strop and Motter & Shultz for respondent.

The objections of the defendant made in this court are not as to form of the instructions given or refused, but are to the effect that a demurrer to the evidence should have been given. Plaintiff was entitled to have his case submitted to the jury upon either of three propositions, viz: (a) Because the valve was defective, but not so glaringly as to compel him to quit his employment. Hamilton v. Mining Co., 108 Mo. 376. (b) Because defendant having promised to repair the defect, plaintiff in law did not assume the risk. Meyer v. Mfg. Co., 67 Mo. App. 389; Huff v. Railroad, 100 U. S. 225. (c) Because sufficient time had elapsed from the time the defect was reported to the master and the time when the injury occurred to justify plaintiff believing the defect had been repaired. Reber v. Tower, 11 Mo. App. 203; Porter v. Railway, 71 Mo. 79, 40 L. R. A. 799; Railway v. Babcock, 154 U. S. 190. There is no force in the objection that the court refused to permit defendant to prove custom as to when the repairs should be made for the reason that no offer was made to show that plaintiff had any knowledge of such custom. Park v. Viernow, 16 Mo. App. 385.

BROADDUS, J.—The defendant is a corporation engaged in the business of slaughtering live stock and in curing and preparing the product thereof for market. Plaintiff, on the sixteenth day of May, 1902, was in defendant's employ in the capacity of what was known as a "tripe cooker," and in charge of certain vats in which tripe were boiled. These cooking vats are tanks about six feet high, about seven feet long and

four feet wide. The tripe are boiled by means of steam admitted into the vats through pipes, and the amount of steam required is regulated by a valve in the pipes, the valves being manipulated by the use of a wrench. The evidence shows that the plaintiff on the morning of the day mentioned filled a tank with water and then, by use of the wrench, turned the valve sufficiently to allow steam to escape into the tank, and when the water reached the boiling point he put the tripe into the vat. About 9 o'clock he discovered that the valve had changed from the position in which he had placed it, because there was a greater quantity of steam entering the vat, which caused the water to boil over. He then turned the valve back to its proper position, leaving it about one length open, and continued with the cooking. In about one hour afterwards he informed the foreman, Dreben, that the valve was out of repair and was informed by him that he would have it repaired. After plaintiff had reset the valve so as to prevent the flow of too much steam, he was ordered by the foreman to other work outside of the tripe room. He remained away until about 12 o'clock, shortly after which time he returned to the tripe room, when he found the valve unchanged in its position. He then turned it, he says, so as to entirely cut off the flow of steam into the vat and then turned to get a fork to raise the lid in order to take out the tripe; and while he was doing so, the valve became loose, permitting a full flow of steam into the vat, which caused the water to overflow onto him whereby he was scalded.

It was shown that defendant kept in its employ a mechanic whose duty it was to inspect its appliances and to keep them in repair. There is no dispute but what the pressure of the steam caused the valve to change its position and that it was owing to defective wrapping that such change occurred.

The plaintiff was an experienced workman and well acquainted with his work. It was shown that if

a weight had been hung upon the valve it would have prevented it from turning when set. At the time plaintiff turned off the steam entirely he had a hook in his hand, but he laid it down and turned his back, as has been stated. The foreman testified that when plaintiff informed him that the valve was not working properly he told him to hang a weight on it until the cooking was over and he would have it repaired. Plaintiff testified that he knew there was danger when the valve was loose and that he was liable to get hurt, but that he relied upon the promise of the foreman to repair the defect and did not know but what it had been done when he went back to the tripe room. The defendant offered to show a custom prevailing at the establishment not to repair a leaky valve while a batch of tripe was cooking. but the offer was refused. As there was no offer to show that the plaintiff had knowledge of such a custom, there was no error in refusing the admission of such evidence. After plaintiff was injured the valve was repaired. This work was accomplished in about fifteen minutes.

The finding and judgment were for the plaintiff. At the close of the plaintiff's case the defendant offered a demurrer to the evidence which the court refused, after which it introduced its evidence.

The first objection that defendant makes to plaintiff's right of recovery is, that the petition alleges that the valve was out of order and was allowed to remain so with the knowledge of defendant, but without any knowledge thereof on the part of plaintiff, whereas he was permitted to recover on proof that plaintiff discovered and reported the defect to defendant and received a promise to repair it, and relied on the promise and continued at the work. It was a fatal variance between the *allegata* and *probata.* The allegation of the cause of action was unproved in some material particular but there was not a total failure of proof, consequently the petition is subject to amendment under

section 798 of the code. Ischer v. Bridge Co., 95 Mo. 261.

It is contended that as plaintiff was aware of the danger he assumed the risk. But the rule is different where the servant continues his work relying upon the promise of the master to repair the defective machinery. The plaintiff says he relied upon the promise of the foreman to repair the valve and did not know but what it had been done. In such cases the servant does not assume the risk if the master has had reasonable time to remedy the defect before the injury. "Where a master has expressly promised to repair a defect, the servant can recover for an injury caused thereby within such a period of time after the promise as it would be reasonable to allow for its performance, and for an injury suffered in any period which would not preclude all reasonable expectations that the promise might be kept." Conroy v. Vulcan Iron Works, 62 Mo. 35; which ruling has been uniformly followed by all the appellate courts of the State. The evidence showed that it only took a few minutes to repair the defect in the valve, and it was a question for the jury to determine under the circumstances whether plaintiff was justified in relying upon the foreman having complied with his promise at the time he resumed his work at the vats.

But it is insisted that the danger was obvious and the risk so great that a person of ordinary prudence would not have gone on with the work as the plaintiff did. But it is a rule that, "mere knowledge by the servant that an appliance is defective, and that risk is incurred in its use, will not, as a matter of law, defeat the servant's action for injury received in using it when the danger is not such as to threaten immediate injury, or, where it is reasonable to suppose that the appliance may be safely used by the exercise of care and caution, and it is generally a question for the jury whether the surrounding circumstances made it contributory negli-

gence for the servant to continue using the appliance.''
Hamilton v. Mining Co.,108 Mo. 375.

Yet defendant, while not controverting this rule,
insists that where the servant has equal knowledge with
his master of the defects and danger attending the use
of an appliance, the master is not liable to the servant
for an injury received in the use of such appliance,
Steinhauser v. Spraul, 127 Mo. 541. That case, how-
ever, is scarcely authority for the position assumed by
defendant when the facts therein are considered. The
appliance was a ladder which was said to have been too
short for the purpose for which it was used. There was
no defect in its construction. The court held that the
risk was incident to plaintiff's employment.

The rule that defendant invokes is stated clearly in
Devitt v. Railway, 50 Mo. 302, viz: ''If the principal
has been guilty of fault or negligence, either in provid-
ing suitable machinery, or in the selection or employ-
ment of agents or servants, and injuries arise in con-
sequence, he must respond in damages. But when the
servant himself well knowing the default of his prin-
cipal as in providing defective or unsuitable machinery,
voluntarily enters his employment, he assumes the risk
and can not hold his employer for the consequences.''

The distinction between that class of cases and this
is clear. In the latter the plaintiff did not enter the em-
ployment of defendant with a knowledge of unsuitable
implements in use by his master. The implement in use
was suitable when in proper condition, consequently
there was no assumed risk. He did not assume the
risk of its getting out of order and he was justified in
its continued use, if it was reasonable to suppose that
by the exercise of ordinary care he might do so in
safety; and, as has been said that is generally a matter
to be submitted to a jury. Hamilton v. Mining Co.,
108 Mo., supra.

All defendant's instructions, excepting No. A, were
given. The court was justified in refusing the latter.

Plaintiff fully presented the law of the case upon the theory on which it was tried.

For the error noted the cause is reversed and remanded in order that the plaintiff, if he so desires, may amend his petition. All concur.