LEE AGEE, Respondent, v. THE EMPLOYERS' LIABILITY ASSURANCE CORPORATION, LTD., OF LONDON, ENG., Appellant.

In the Kansas City Court of Appeals, June 18, 1923.

1. **INSURANCE**: Robbery by Holdup: Whether Taking of Property Was Felonious and Within Terms of ''Personal Holdup Endorsement,'' Held for the Jury. In an action to recover for loss of a platinum diamond bar pin, alleged to have occurred within terms

of a residence theft policy, which contained an endorsement covering loss by robbery of property of assured or any permanent member of his household, evidence that wife of assured was jostled in a crowd and her bar pin torn from her waist, the loss of which she did not discover until after the persons who had crowded against and jostled her had disappeared, *held*, that the question, of whether taking of the pin was felonious and within terms of "personal holdup endorsement" covering loss by robbery and defining it as felonious taking of property by violence, inflicted on the person from whom property is taken, or by putting such person in fear of violence, was properly submitted to the jury.

2. ———: Instruction: Vexatious Delay: Statutory Penalty for Vexatious Refusal to Pay Loss Not Inflicted Merely Because Verdict Was Adverse to Insurer and Where Insurer Had Right to Have Court Construe Meaning of Holdup Endorsement Attached to Policy, an Instruction Authorizing Infliction of Penalty Was Erroneous. The statutory penalty under section 6337, Revised Statutes 1919, authorizing a finding of damages for vexatious refusal to pay loss and attorney's fee, *held*, not to be inflicted merely because verdict was adverse to insurer, and will not be upheld unless the evidence and circumstances show such refusal was willful and without reasonable cause, so that where insurer had a right to have court construe meaning of so-called holdup endorsement attached to policy, an instruction authorizing infliction of penalty for vexatious refusal to pay loss was erroneous.

Appeal from the Circuit Court of Jackson County.—
*Hon. Thos. J. Seehorn*, Special Judge.

AFFIRMED (*conditionally*).

*J. C. Rosenberger* for respondent.

*Lathrop, Morrow, Fox & Moore, Geo. J. Mersereau* and *Manuel H. Davis* for appellant.

ARNOLD, J.—This is an action to recover for the loss of a platinum diamond bar pin, alleged to have occurred within the terms of a residence theft policy issued by defendant to plaintiff, which said policy contained an endorsement covering all loss by robbery of property of assured or any permanent member of his household.

On March 4, 1921, Mrs. Evelyn Agee, wife of the insured, was wearing a diamond platinum pin about two and one-half inches in length, having three large diamonds in the center, surrounded by some forty or fifty small diamonds. She was wearing the pin on a "georgette" lace front attached to her dress by means of safety pins. It was pinned to this lace front and locked. She had bought a waist on the Walnut Street side of Kline's Cloak & Suit Company in Kansas City, Mo., and after having tried on the new waist, she noticed the pin was securely attached to her waist front. She thereupon went to the cashier's desk to pay for the waist and while waiting for her package and change, she decided to go into the Main Street side of the store to make some other purchases. The store in question occupies part of the entire block between Main and Walnut streets. An alley divides the store into two buildings and in passing from one building to the other it is necessary to pass through swinging doors into a vestibule, some four or five feet wide by five to six feet long, thence across the alley into a similar vestibule leading into the other building.

On the occasion in question, Mrs. Agee left the cashier's desk and started toward the vestibule, but before entering therein, a little girl ran into her skirts and made some remark about Mrs. Agee's black glasses. Mrs. Agee spoke to the child, then proceeded toward the other section of the store, and as she was passing through the vestibule, she was jostled by several unknown persons coming from the opposite direction, who crowded against her. After she passed out of the vestibule, she noticed her clothing was out of order, her waist front torn loose from her dress and hanging, a piece torn therefrom, and her bar pin gone. At the time this discovery was made, the persons who had crowded against, and jostled her, had disappeared. She returned at once to the cashier's desk and reported the incident, and also sought the nearest policeman and reported the matter to him. She

called plaintiff by telephone and the two went at once to the local office of defendant and reported the loss. The agent of the defendant company reduced her statement to writing in condensed form and it was then signed by plaintiff.

On April 4th, a month after the occurrence, defendant wrote a letter to the assured informing him that the company's "investigation discloses that the loss of your wife's bar pin did not occur as the result of robbery as defined by provision No. 1 on the Personal Hold-up endorsement attached to your policy. Apparently there was no forcible taking of property by violence inflicted upon the person of your wife, nor was she put in fear of such violence." Further the letter informed the insured of the refusal of the company to assume any liability on account of said loss. This suit followed.

The petition alleges facts as above outlined, placed the value of the pin at $1500, and asked judgment therefor, together with $150 for statutory vexatious delay and $500 attorney's fee. The answer and reply thereto were general denials.

The trial was to a jury, resulting in a verdict in favor of plaintiff for $1000 on the policy, $67.50 interest, $100 damages and an attorney's fee of $250, and judgment therefor was accordingly entered. Motions for new trial and in arrest were unsuccessful and defendant appeals.

The first question presented for our consideration in the charge that the court erred in refusing defendant's instructions in the nature of demurrers, offered at the close of plaintiff's case and again at the close of all the evidence. This assignment involves the construction of the "Personal Holdup Endorsement" clause of the policy, which reads: "In consideration of an additional premium of $19, it is agreed that $5000 of the insurance under this policy is hereby extended . . . to cover for all loss by robbery of property of the assured or of any permanent member of the assured's household who does not pay board or rent or of a relative of the assured

permanently residing with him . . . subject to all the general provisions of the policy as originally written and to the following special provisions:

"Special Provisions, 1. Robbery as used in this endorsement shall mean a felonious taking of property by violence inflicted on the person from whom the property is taken, or by putting such person in fear of violence."

This is the only special provision in this endorsement involved in this appeal. It is urged by defendant that the provision of the endorsement quoted above does not render defendant liable under the facts in evidence in this case. It is argued that the heading of the endorsement clearly defines the intent of the contract following thereunder.

We cannot accept defendant's contention on this point as conclusive, nor are we warranted in accepting the heading of the endorsement as controlling. It must be conceded that the heading of the endorsement could have been other than the one employed. Reference to the special clause above quoted shows beyond question that in order to bring the robbery within its terms, there must be a showing either of "a felonious and forcible taking of property by violence inflicted upon the person," or "by putting such person in fear of violence." Under the facts herein, we may eliminate the second of these disjunctive elements. There was no testimony tending to show that Mrs. Agee was "put in fear of violence." The determination of this appeal, then, will be controlled by the first element mentioned, to-wit, whether or not there was "a felonious and forcible taking of property by violence inflicted upon the person" of Mrs. Agee.

We apprehend there will be no question that the taking of the pin was "felonious," if the taking was as the evidence for plaintiff tends to show. We hold there was substantial evidence that the pin was so taken. On this point the testimony of Mrs. Agee alone is sufficiently substantial to warrant the submission of the case to the

jury on that point. She stated she observed the pin on her waist just before leaving the counter after she had tried on the new waist; that the pin then was fastened securely; that the small child ran against her and that she was jostled and crowded by persons in the vestibule; that immediately thereafter she observed her clothing disarranged, the front of her waist torn and hanging, and the bar pin gone. We think this testimony sufficient to form a basis for a reasonable conclusion by the triers of fact that there was violence used in the taking of the bar pin from the person of Mrs. Agee; that this violence was inflicted upon the person of Mrs. Agee cannot be seriously denied, as the clothing she wore at the time was disarranged and torn.

Violence is defined as force, "physical force; force unlawfully exercised." Anderson's Law Dict. We cannot accept defendant's theory that the clause in the special provision limits recovery to a "holdup," as commonly understood. The clause defines the word "robbery" and to this we direct consideration. It was held in Duluth St. Ry. Co. v. Fidelity & Deposit Co. (Minn.), 161 N. W. —: "Robbery implies the use of force, or, putting in fear, but if the thief jostles his victim for the purpose of diverting his attention, and while his attention is so diverted, picks his pocket, the crime is robbery."

In that case the defendant insured the plaintiff against loss by force and violence commonly known as highway robbery, or holdup. The plaintiff's treasurer, with a large amount of money in an inside pocket of his coat, buttoned up, encountered three thieves in an elevator. One crowded him against the other, thus distracting his attention while the other stole his money without his realizing its loss at the time. The court held this was robbery under the holdup clause in the policy.

Robbery by holdup originally implied the stopping and robbing of persons traveling, but the term has ac-

quired a broader meaning and is now applied to robbery in general by the use of force, or putting in fear. In State v. Massey, 274 Mo. 578, the word "force" is defined as power exerted against will or consent, and in State v. Spivey, 204 S. W. 259, our Supreme Court in defining robbery, said: "Snatching a valuable article from another is always denominated robbery where any force is exercised either to overcome the resistance of the person robbed or in detaching the article taken where it is fastened in some way to the clothing or person of the one robbed." [Citing State v. Broderick, 59 Mo. 318; State v. Moore, 106 Mo. App. 480, 17 S. W. 658; Evans v. State, 80 Ala. 4; Usom v. State, 97 Ga. 194, 22 S. E. 399; Burke v. State, 74 Ga. 372; Thompson v. State (Tex. Cr. App.), 26 S. W. 1081; Stockton v. Commonwealth, 125 Ky. 268, 101 S. W. 298; People v. Ryan, 239 Ill. 410, 88 N. E. 170; State v. Sommers, 12 Mo. App. 374.] Under these authorities, we think the testimony offered in plaintiff's behalf (which for the purpose of the demurrers must be accepted as true), fully brings the claim within the terms of the contract, and the submission of the case to the jury was proper.

The only question remaining for our solution is defendant's charge that the court erred in giving plaintiff's instruction No. 2, submitting to the jury the question of vexatious delay and authorizing a finding of damages for vexatious refusal to pay and for reasonable attorney's fee. The instruction is based upon section 6337, Revised Statutes, 1919, which provides:

"In any action against any insurance company to recover the amount of any loss under a policy of fire, cyclone, lightning, life, health, accident, employers' liability, burglary, theft, embezzlement, fidelity, indemnity, marine or other insurance, if it appears from the evidence that such company has vexatiously refused to pay such loss, the court or jury may, in addition to the amount thereof and interest, allow the plaintiff damages not to exceed ten per cent. on the amount of the loss and a rea-

sonable attorney's fee; and the court shall enter judgment for the aggregate sum found in the verdict.''

This court in Patterson v. Ins. Co., 174 Mo. App. 37, 44, 160 S. W. 59, announced a rule which we think governs in the case at bar. It is there said: "It is true the whole question of vexatious delay is a question for the jury, as has been decided by Keller v. Insurance Co., 198 Mo. 440, but it is only so when from a general survey of all the facts and circumstances in the case an inference can be drawn that the refusal was unjustifiable and vexatious. And while affirmative proof is not required to show vexatious refusal, yet the penalty should not be inflicted unless the evidence and circumstances show that such refusal was willful and without reasonable cause as the facts appeared to a reasonable and prudent man before the trial; and merely because the judgment, after trial, is adverse to defendant's contention, is no reason for inflicting the penalty.''

To the same effect is the case of Berryman v. Southern Surety Co., 227 S. W. 1. c. 101, quoting the case of Non-Royalty Shoe Co. v. Assurance Co., 277 Mo. 399, 210 S. W. 37, wherein the rule laid down in the Patterson case is approved. Under these authorities we hold there is no basis in the case at bar for the penalty liability and attorney's fees. Under the ruling in State ex rel. v. Allen, 243 S. W. 839 (Mo.), the question as to whether defendant was liable under the so-called holdup endorsement attached to the policy, was one upon which defendant clearly had the right to seek the answer of the courts of this State without having to pay a penalty therefor. A penalty for vexatious refusal to pay an insurance loss is not to be inflicted from the mere fact that the verdict was adverse to the defendant. We hold the facts of record in this case not sufficient to entitle plaintiff to collect a penalty and that the giving of the instruction to this effect was error.

If, therefore, within ten days from the filing of this opinion, plaintiff will remit all of the amount named in

the verdict in excess of $1,000 and interest $67.50 (total $1067.50), the judgment will be affirmed; otherwise it will be reversed and the cause remanded for another trial. It is so ordered. All concur.