STATE of Missouri, Respondent,

v.

Willie MACK, Appellant.

No. WD 56489.

Missouri Court of Appeals,
Western District.

Feb. 15, 2000.

Kent Denzel, Asst. Public Defender, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Breck K. Burgess, Asst. Atty. Gen., Jefferson City, for respondent.

Before Judge VICTOR C. HOWARD and THOMAS H. NEWTON

LAURA DENVIR STITH, Presiding Judge.

Defendant Willie Mack was convicted of committing violence against an employee of the Department of Corrections under Section 217.385 RSMo Cum.Supp.1995 for spitting in the face of Officer Randy Fletchall. Mr. Mack appeals, arguing that spitting does not rise to the level of "violence" under Section 217.385. We agree. While such conduct may be actionable as third degree assault under Section 565.070.1(5) RSMo 1994, or under other statutes, it does not constitute violence as that term is used in Section 217.385. Accordingly, we reverse.

## I. STATEMENT OF FACTS

Viewed in the light most favorable to the verdict, the facts adduced at trial are as follows:

At approximately 1:00 p.m. on November 13, 1996, the classification staff at the Western Missouri Correctional Center (WMCC) in DeKalb County, Missouri, sent Randy Fletchall, a Corrections Officer at WMCC a list of inmates to be placed under "room restriction." This list included Defendant.

Being under room restriction is one of many sanctions that may be imposed on inmates who violate the rules of the correctional center. Once it is imposed, the inmates are required to remove their gray clothing in return for blue clothing. This difference in the color of the clothing assists the officers in the correctional center in determining whether inmates are where they are supposed to be.

According to the testimony of Steven E. Moore, Associate Superintendent of Inmate Management for WMCC, before an inmate is placed under room restriction, the inmate is granted a hearing before a disciplinary hearing officer to discuss the imposition of the sanction. Mr. Mack de-

nies receiving a hearing concerning his placement under this restriction and nothing in the record indicates that such a hearing took place.

The evidence was that, upon learning that Defendant was to be placed under room restriction, Mr. Fletchall called Defendant over a voice amplification device and requested that he report to the control unit of the correctional center. When Mr. Mack arrived, Mr. Fletchall instructed him to turn in his gray clothes in return for blue clothes. Mr. Mack began to argue with Mr. Fletchall, believing that he should not be placed under room restriction, and demanded to know why he was being sanctioned.

When Mr. Mack continued to resist Mr. Fletchall's orders, the latter began to fear that the heated nature of their exchange might lead to behavior problems involving other inmates who were near enough to hear them. To avoid escalating the situation, Mr. Fletchall therefore asked Mr. Mack to go with him to the classification office where the matter could be discussed outside the presence of the other inmates. Defendant voluntarily accompanied Mr. Fletcher to this office.

Once in the office, Mr. Fletchall again demanded that Defendant turn in his gray clothes. Mr. Mack continued to defy these orders, stating that he did not know why he was being placed under room restriction, and asking the reason. Officer Fletchall stated at trial that he did not know the reason for the sanction. He could have found out, but did not do so because he thought doing so would have interfered with the tasks he had to complete.

Although Mr. Mack made no threats, gestures, or contact with Mr. Fletchall, Officer Fletchall feared that Mr. Mack's continued refusal to obey him might lead to physical violence. He therefore ordered Defendant to "cuff up," that is, to allow himself to be handcuffed by placing his hands behind his back. Despite several requests, Mr. Mack refused to allow himself to be handcuffed. Officer Fletchall

then informed Mr. Mack that if he continued to ignore the "cuff up" requests, Officer Fletchall would use mace. The officer removed a mace can from his belt, but Mr. Mack still failed to comply. At that point, Officer Fletchall testified that Mr. Mack turned towards him in a way that caused Mr. Fletchall to believe the encounter might escalate. Officer Fletchall therefore sprayed a one-second burst of mace into Mr. Mack's face.

Based on his observations of others who were sprayed with mace, compared to how Mr. Mack reacted, Officer Fletchall believed the mace did not work as well as it should have worked, for instead of turning away, Mr. Mack continued to look at him. This was an unusual reaction, according to the officer. In addition, Officer Fletchall noticed that he felt fewer peripheral effects of the mace in the air, too, compared to the effects he had noticed on other occasions when he had sprayed mace. Officer Fletchall kept his distance from Mr. Mack and called for assistance.

Within a few seconds, another officer arrived and ordered Mr. Mack to "cuff up". Defendant did so after a couple of requests. Once Mr. Mack was under the control of the other officer, Officer Fletchall went into the hallway to ensure that the path was clear. The other officer then brought Defendant out of the room and down the hallway. When Mr. Mack passed Officer Fletchall in the hall, he turned his head towards Officer Fletchall and spit. The spit went directly into Officer Fletchall's face and eye.

At trial, Mr. Mack testified that spitting in Officer Fletchall's face was purely accidental. He said that the mace had gone into his eyes and mouth and caused him to rub his eyes and spit uncontrollably. Thus, he claims, his spitting was only a reaction, not intentionally directed at Officer Fletchall, but intended to mitigate the effects of the mace. Although Officer Fletchall conceded the possibility that Mr. Mack could have been trying to get rid of

the mace, he firmly believed that the mace had not affected Mr. Mack that much and that the spitting in his face was not accidental. He testified that when Mr. Mack passed him, he turned his head, cleared his throat, and spit in the direction of his face. Officer Fletchall has not suffered from any injury or illness as a result of this incident, and there is no evidence that Mr. Mack's saliva contained any infectious disease.

Mr. Mack was tried for violating Section 217.385, which prohibits "committing violence" to an employee of the department of corrections. The jury found him guilty. As a prior offender, he was sentenced by the judge. Although Judge Stephen K. Griffin orally stated at trial that Mr. Mack was a prior but not a persistent offender, his written judgment sentenced him as both a prior and persistent offender to six years imprisonment, the sentence to run consecutively to Mr. Mack's prior sentence.[1]

## II. STANDARD OF REVIEW

We review issues of law *de novo*, and give no deference to the trial court's determination. *State v. Rousan,* 961 S.W.2d 831, 845 (Mo. banc 1998); *State v. Tinoco,* 967 S.W.2d 87, 89 (Mo.App. W.D.1998). In reviewing sufficiency of the evidence claims, the "evidence and all reasonable inferences therefrom are reviewed in the light most favorable to the jury's verdict and any contrary evidence and inferences are discounted." *State v. Smith,* 944 S.W.2d 901, 916 (Mo. banc 1997). We consider whether, in light of this evidence, a jury could reasonably have found Defendant guilty beyond a reasonable doubt. *State v. Dawson,* 985 S.W.2d 941, 951 (Mo. App. W.D.1999).

## III. SPITTING DOES NOT CONSTITUTE VIOLENCE AGAINST A CORRECTIONS OFFICER

Defendant argues that the court erred in overruling his motion for judgment of acquittal on the charge that he committed violence against an employee of the department of corrections in violation of Section 217.385 because the State's evidence showed, at best, that he spit on Officer Fletchall while walking past him in handcuffs, and spitting alone does not constitute a violation of Section 217.385. That section states, in relevant part:

1. ***No offender shall knowingly commit violence to an employee*** of the department or to another offender housed in a department correctional center. Violation of this subsection shall be a class B felony.

Sec. 217.385. (emphasis added) Although Section 217.385 criminalizes violence against a corrections officer by an offender, neither it nor any other section in Chapter 217 defines "violence" as used in that statute. *See* Sec. 217.010 *et seq.* In the absence of such a statutory definition, prior cases have held that the word violence is a word of common usage and the courts should be guided by the plain and ordinary meaning of the term in instructing the jury. *See e.g. State v. Carson,* 941 S.W.2d 518, 521 (Mo. banc 1997) (words in statutes should be given their plain and ordinary meaning unless a special meaning is indicated); *State v. Tull,* 375 S.W.2d 100 (Mo.1964) (no definition of term violence is required in instructing jury); *State v. Taylor,* 746 S.W.2d 102 (Mo.App. W.D.1988) (accord); *State v. Lee,* 708 S.W.2d 229 (Mo.App. W.D.1986) (accord). Moreover, where construing a criminal statute, we will examine the plain language of the statute in an attempt to determine the legislature's intent. *State v. Crews,* 968

---

1. The State agrees that the trial court erred in entering a written judgment finding Mr. Mack to be a prior and persistent offender, and requests that we remand solely for the purpose of allowing the judge to conform the written judgment with his prior oral pronouncement finding Mr. Mack to be a prior but not a persistent offender. Because, for the reasons stated below, we reverse Mr. Mack's conviction, we do not address this issue.

S.W.2d 763, 765 (Mo.App. E.D.1998). Where the meaning of the statute is unclear or ambiguous, we will construe it strictly against the State, keeping in mind common sense and the evident statutory purpose. *State v. Hobokin,* 768 S.W.2d 76, 77 (Mo. banc 1989).

*Webster's Third New International Dictionary* defines "violence" as an "exertion of any physical force so as to injure or abuse," *Webster's Third New International Dictionary* 2554 (1993). We adopted this definition of violence in interpreting section 217.385 in *State v. Lee,* 708 S.W.2d at 231. *Merriam Webster's Collegiate Dictionary* similarly defines "violence" as "intense, turbulent, or furious and often destructive action or force," *Merriam Webster's Collegiate Dictionary* 1319 (10th Ed.1994).

These definitions of violence are consistent with the definition our courts have given the word violence in other contexts. *See, e.g., State v. Hawkins,* 418 S.W.2d 921, 924 (Mo. banc 1967) (" 'violence' may consist of violent, menacing, turbulent, and threatening action or procedure"); *Boecker v. Aetna Cas. & Sur. Co.,* 281 S.W.2d 561, 564 (Mo.App.1955) (in the context of an automobile accident, the court, citing Webster's New International Dictionary, 2nd Ed., broadly defined violence as "the exertion of any physical force considered with reference to its effect on another than the agent"); *Agee v. Employers' Liability Assur. Corporation, Limited, of London, Eng.,* 213 Mo.App. 693, 253 S.W. 46, 48 (1923) (violence defined as "physical force; force unlawfully exercised").

These definitions of violence are also consistent with the definition of violence in *Black's Law Dictionary,* which defines violence as "[u]njust or unwarranted use of force, ... accompanied by fury, vehemence, or outrage; physical force unlawfully exercised with the intent to harm", *Black's Law Dictionary* 1564 (7th Ed.1999), and to its definition under statutes dealing with issues such as domestic violence and violence in schools.[2]

By contrast, to spit means "to eject saliva as an expression of aversion or contempt." *Merriam Webster's Collegiate Dictionary* 1134 (10th Ed.1996). Similarly, *Webster's Third New International Dictionary Unabridged* 2199 (1993), defines to spit as "to express (scorn, hatred, or malicious feeling) by or as if by spitting; ... to eject saliva as a gross insult; ... to be angry." *Id.* While the State argues that one must "impel" or "blow" the spit out of one's mouth in order to spit, and that such an action constitutes violence, albeit of a minimal sort, we think this stretches the definition of violence too far. A sneeze or cough may also blow mucus toward another, but intentionally sneezing or coughing in another's direction clearly could not be called violence. Neither, we find, can spitting, in and of itself, be considered the commission of violence against an employee of the department of corrections. Certainly, the State has cited no case, in Missouri or elsewhere, which has defined spitting as violence.[3]

**2.** Section 455.200 defines domestic violence as:

> attempting to cause or causing bodily injury to a family or household member, or placing a family or household member by threat of force in fear of imminent physical harm.

Sec. 455.200(2) RSMo 1994. *See also* Sec. 375.1312 Cum.Supp.1998. In addition, acts of violence in schools encompass:

> exertion[s] of physical force by a student with the intent to do serious physical injury as defined in subdivision (6) of section 565.002, RSMo, to another person.

Sec. 160.261.2 RSMo Cum.Supp.1996.

**3.** In *State v. Taylor,* it is interesting to note that a female inmate was charged with an offer to commit violence based on the fact that she bit and clawed and spat in the face of corrections officers. In holding that the jury did not need to have the word "violence" defined, the court said "there was not even a remote possibility that the jury could have been misled or confused by the instruction. Appellant bit and clawed the correction officers and resisted their attempts to preserve order in the institution." *Taylor,* 746 S.W.2d at 104. The court never mentioned the alleged spitting as being included in the acts

By our holding, we do not mean to suggest that Defendant did not commit an actionable offense by knowingly spitting on the guard. He may well have violated other statutes. For instance, Section 565.070.1(5) provides that a person commits the Class C misdemeanor of third degree assault if "the person knowingly causes *physical contact* with another person knowing the other person will regard the contact as *offensive or provocative.*" Sec. 565.070.1(5) Cum.Supp.1998 (emphasis added).

We recently interpreted the meaning of the term "physical contact" as used in Section 565.070.1(5) in *Dawson*, 985 S.W.2d at 951. In *Dawson*, defendant was found guilty of putting semen in the victim's coffee mug, with the purpose of causing her to drink it. Defendant argued that, even if he had committed this act, this was insufficient to constitute "physical contact" as that term is used in the statute because he did not physically touch the victim. We rejected this argument, noting that physical contact has been defined as "the touching of the person of another or something so intimately associated with, or attached to his person to be regarded as a part thereof." *Id.* In concluding that forc-

ing the victim to come in contact with defendant's semen constituted such a touching, we relied on the holding in *State v. Keller,* 40 Or.App. 143, 594 P.2d 1250 (Or.App.1979), that putting a person in contact with another's spit constitutes physical contact.

In *Keller,* defendant was similarly charged under a harassment statute that prohibited subjecting another person to offensive *physical contact.* The Oregon court rejected the argument that spitting does not constitute physical contact because there is no direct touching or hitting, finding that touching the person with spit is just as much physical contact as is slapping or striking. *Id.* at 1252. Similarly, *People v. Peck,* 260 Ill.App.3d 812, 198 Ill.Dec. 760, 633 N.E.2d 222 (4 Dist.1994), found that spitting in the face of a police officer was physical contact sufficient to sustain a conviction for the crime of aggravated battery and the resulting six year sentence. *Peck,* 198 Ill.Dec. 760, 633 N.E.2d at 223.[4] *Dawson* also cited an Arizona case, *State v. Mathews,* 130 Ariz. 46, 633 P.2d 1039, 1042 (1981), which found that throwing urine on a police officer constitutes an assault under a statute defining assault as "knowingly touching an-

which the jury would have understood came within the definition of violence.

In addition, our own research has uncovered a single case, *People v. Terry,* 217 Mich. App. 660, 553 N.W.2d 23, 24–25 (1996), in which Michigan court found that spitting on a prison guard did constitute violence against an employee of an inmate's place of confinement. However, that case was governed by an instruction which defined violence as "any wrongful application of physical force against another person so as to harm *or embarrass* him." Id. at 24 (emphasis added). As just noted, and unlike Michigan, Missouri does not define violence as the use of physical force to embarrass another, but rather as the use of physical force to harm or abuse another. *Terry,* while instructive, thus does not ultimately assist us in determining whether spitting can constitute violence under Missouri law.

4. We note that while the court in *Peck* found that spitting in the face of a police officer constituted aggravated battery, the statute defining the acts prohibited in that case were

worded much more broadly. Section 12–3(a)(2) of the Illinois Code provides that:

> A person commits battery if he intentionally or knowingly without legal justification and *by any means* . . . makes physical contact of an insulting or provoking nature with an individual. (Emphasis added.) 720 ILCS 5/12–3(a)(2)(West 1992).

*Peck,* 198 Ill.Dec. 760, 633 N.E.2d at 223. (Such a battery becomes "aggravated" when visited upon a peace officer. 720 ILCS 5/12–4(b)(6) (West 1992)). The Illinois court stressed that battery is committed under this statute where there is contact with the victim "by any means." *Id.* Moreover, there was no mention of violence in this statute. Rather, it required only that the contact be insulting or provocative. We find that the minimum level of contact required for conviction under the Illinois statute is much lower than the contact necessary for conviction under Sec. 217.385, which requires *violence* and not merely insulting or provocative contact by any means.

other person with the intent to injure, insult or provoke such person." *Dawson*, 985 S.W.2d at 952.

Applying the reasoning of *Dawson* and similar cases, it is clear that an inmate's act of spitting on a guard would constitute offensive or provocative physical contact and would be punishable at least under Section 565.070, and perhaps under other statutes as well. There is, however, a distinction between proof of unwanted physical contact, and committing violence. While spitting is the former, it does not, at least in the circumstances of this case, constitute the latter.[5]

For these reasons, we reverse Defendant's conviction of committing violence against an employee of the department of corrections.

Judge VICTOR C. HOWARD and Judge THOMAS H. NEWTON, concur.

---

5. Because the facts of this case clearly do not involve spitting in the context of an intended transmission of a communicable disease, we do not decide here whether such an act could constitute violence or a higher degree of assault because of an intent to cause death or serious physical injury.