THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DWAYNE WALKER, Defendant-Appellant.

Fourth District   No. 4—96—0491

Opinion filed August 19, 1997.

Daniel D. Yuhas and Michael H. Vonnahmen, both of State Appellate Defender's Office, of Springfield, for appellant.

Thomas J. Brown, State's Attorney, of Pontiac (Norbert J. Goetten, Robert J. Biderman, and James Majors, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE GREEN delivered the opinion of the court:
Following a jury trial on March 28, 1996, defendant, Dwayne

Walker, was found guilty of aggravated battery pursuant to section 12—4(b)(6) of the Criminal Code of 1961 (Code) (720 ILCS 5/12—4(b)(6) (West 1994)) in that he threw a liquid substance on two correctional employees engaged in the execution of their official duties. Defendant was sentenced to three years in the Illinois Department of Corrections (DOC) to run consecutive to the sentence he was presently serving in Fulton County case No. 92—CF—146. Defendant appeals his conviction, contending (1) he did not voluntarily waive his right to be present at trial, (2) the State failed to prove the element of "physical contact" necessary to sustain a conviction for aggravated battery, and (3) his statement made following the incident should not have been admissible. We affirm.

Following jury selection on March 27, 1996, defendant requested to return to the Pontiac Correctional Center (Pontiac) to rest over the lunch hour because he was "hurt" and "in pain." Defendant had a hip and lower back condition that required he stay in a wheelchair and take pain medication. Defendant wanted to go to Pontiac so he could receive some additional pain medication. The court advised defendant it would be impossible for him to be processed in and out of Pontiac in that short of a time period, and if defendant went to Pontiac and was late coming back, he would be waiving his right to be present during the opening stages of the trial. Defendant indicated he believed he was being punished for being ill and then stated he would just go back to the Dixon Correctional Center (Dixon) (where he was serving his present sentence).

During lunch recess, the court contacted the medical director at Dixon and the medical doctor at Pontiac. The court learned defendant was given powerful pain medication at Dixon to last the day of trial and that defendant had consumed all the medication that morning. The court was advised by the Dixon medical director that defendant had received all the pain medication necessary for his condition. The court was advised by the medical doctor at Pontiac that because defendant was already given pain medication at Dixon, he would not be prescribed more at Pontiac without a full medical exam.

Upon defendant's request, the court sent defendant back to Dixon with the writ team and stated on the writ, as follows:

"[Defendant] is to be produced tomorrow morning, March 28, 1996, at 9:00 a.m. for continuance of jury trial. [Defendant] has chosen to go back to Department of Corrections during his jury trial. He has a right to do that. The trial will continue in his absence unless *** [defendant] tells prison staff on Thursday, March 28, that he wants to go to Pontiac for the rest of his trial."

The court instructed the jurors, upon their return to the

courtroom, that defendant had a hip and back condition for which he was taking medication prescribed for him; however, defendant had decided to return to Dixon due to the pain and discomfort he was experiencing. The court further stated, "[a] defendant in a criminal case has a constitutional right to be present at [his] trial. But [he] also has a right to elect not to be present," and the defendant has chosen not to be present. The court then instructed the jury that it should not consider defendant's absence as a factor in the case, but should make its decision based on the testimony and evidence.

The next day additional evidence was presented. Defendant did not appear. The court readmonished the jury concerning defendant's absence. The trial was conducted that day, and the jury returned a verdict of guilty in defendant's absence.

■ Section 115—4.1(a) of the Code of Criminal Procedure of 1963 (Code of Procedure) (725 ILCS 5/115—4.1(a) (West 1994)) provides that "[i]f trial [has] previously commenced in the presence of the defendant and the defendant willfully absents himself for two successive court days, the court shall proceed to trial." Defendant recognizes the Supreme Court of Illinois stated in *People v. Flores*, 104 Ill. 2d 40, 50, 470 N.E.2d 307, 311 (1984), that this portion of the statute governing trials *in absentia* is permissive and not mandatory. Thus, it is within the trial court's discretion whether to wait or proceed to trial. Defendant contends that, here, because his pain prevented him from staying at the trial, he did not voluntarily absent himself from the trial. Thus, defendant maintains the court abused its discretion in failing to continue the trial for two days pursuant to section 115—4.1(a) of the Code of Procedure.

In *People v. Owens*, 102 Ill. 2d 145, 464 N.E.2d 252 (1984), the defendant was present during the trial and part of the sentencing proceedings but requested to be excused from that portion of the proceedings in which evidence of aggravating and mitigating factors was presented. The court informed the defendant it would take the matter under advisement, but following lunch, the defendant stated he was not returning to court and indicated he did not feel well and did not want to be present. The court proceeded without defendant being present. The *Owens* court upheld the actions of the trial court, reasoning that the defendant's sixth amendment right to be present at every stage of the proceedings can be waived. As a rule, the *Owens* court noted, " 'where a defendant voluntarily absents himself from a courtroom and refuses to be present for further proceedings[,] he is deemed to have waived his right and cannot claim any advantage on account of his absence.' " *Owens*, 102 Ill. 2d at 157, 464 N.E.2d at 258, quoting *People v. De Simone*, 9 Ill. 2d 522, 533, 138 N.E.2d 556, 562 (1956).

■ Here, while defendant stated he wanted to be present during the trial, he placed demands on the court to ensure his presence, which would have been impossible for the court to satisfy. Essentially, defendant wanted to be prescribed more pain medication than the doctors at both Dixon and Pontiac were willing to prescribe, at least without a full examination. Initially, when defendant first complained of pain he failed to even inform the court that he had consumed that morning all the pain medication that was prescribed to last the day. Given the fact that defendant was provided with adequate pain medication to get through the day, together with his clear unhappiness about having to travel several hours to court, as demonstrated at several pretrial conferences, the circuit court properly found defendant voluntarily waived his right to be present during both days of trial.

The instant case is distinguishable from *People v. Jones*, 269 Ill. App. 3d 925, 929-30, 647 N.E.2d 612, 615-16 (1995), where this court held the trial court committed reversible error in failing to wait more than five minutes to proceed when the defendant was late for closing arguments. The defendant had appeared during the trial, and there had been no attempt to locate him. Furthermore, as defendant appeared only 15 minutes late, this court concluded that a short continuance would not have been fruitless. Here, however, the court took diligent steps to determine whether anything more could be done to make defendant comfortable. Moreover, a continuance of the trial would not have likely changed defendant's ability to be present, as the record demonstrates he was not likely to receive more pain medication from Dixon or Pontiac medical staff and he was not going to stay without an increase in pain medication.

Defendant next maintains the State did not prove the essential element of "physical contact" necessary to sustain a conviction for aggravated battery under section 12—3(a)(2) of the Code (720 ILCS 5/12—3(a)(2) (West 1994)). At trial, there was no dispute defendant threw a liquid substance at a correctional officer and a nurse while in a segregation unit at Pontiac. The only factual issue in dispute was whether the substance thrown was water or urine, and, as we subsequently explain, the nature of the substance thrown would make no difference.

The State called Robert Montgomery, a correctional officer at Pontiac, who testified that on the evening of July 17, 1994, he was escorting nurse Hammond Dieterle to the segregation unit at Pontiac where defendant's cell was located to disburse medication to defendant. Montgomery stated that on this particular evening, when Dieterle put defendant's medication in his hand, defendant immediately

became irate and started yelling and getting belligerent because he believed his medication had been changed and there was a "conspiracy to get him or to change his medication or something." According to Montgomery, when Dieterle explained to defendant that she was not in charge of issuing the medication, just giving it out, defendant got very irritated, picked up a plastic cup that was sitting on the corner of his bed, reached through the cell bars, and threw it at them. Montgomery indicated the substance went mostly on him, but some of it got on Dieterle's pant leg and blouse. When asked what Montgomery believed the substance to be, he stated he believed it was urine. Montgomery stated it could have been water, but he did not think so because it left stains on their clothing and smelled bad.

Officer Montgomery identified People's exhibit No. 3 as the incident report he prepared immediately after the altercation. The incident report indicated defendant's statement as he was throwing the substance was "[w]hy are you doing this shit to me, you bitch" and that "he was going to get her." The report also indicated defendant threatened Montgomery not to "step in front of [his] cell," and that he was going to save up everything for Montgomery and the other officers, which Montgomery believed to mean "feces," "puke," "piss" and everything.

The State also called Lieutenant David Johansen, a supervisor with DOC, who testified that, after he learned defendant had thrown a substance on Montgomery and Dieterle, he proceeded to "strip out" defendant's cell to temporarily take away his personal belongings. According to Johansen, defendant became angry and threatened to throw "piss and shit" on any officer or employee that walked past his cell. Richard Irvin, a chief investigator at Pontiac, testified defendant told him nurse Dieterle had made "racial comments toward him, and that she [had] been messing with his medication. And then he said he threw some water on her."

The defense then called Frederick Walker, an inmate in the segregation unit at Pontiac on the day in question. Walker stated that at around 5:30 on July 17, 1994, (1) he was one cell over from defendant; (2) nurse Dieterle came to defendant's cell with his medication and a small cup of water to drink his medication with; (3) Dieterle and defendant got into an argument as to whether defendant had actually taken his medication; and (4) defendant became angry and threw the cup of water in Dieterle's face. Walker indicated he had prepared an affidavit as to what he saw upon defendant's request.

The next inmate for the defense was Byron Hanna. Hanna stated that on the day in question (1) he was an inmate in the segregation unit at Pontiac; (2) his cell was next door to defendant's cell; (3)

nurse Dieterle stopped at defendant's cell to give him his medication; (4) the next thing he knew, they started arguing with one another; (5) defendant told Dieterle to get away from his cell; and (6) he saw some water go out of the cell. When Hanna was asked how he knew it was water, he indicated defendant was in a wheelchair and he did not think Dieterle would stand there and wait around while defendant urinated in a cup so he could throw it at her. Hanna identified People's exhibit No. 4 as the affidavit he prepared as to what happened.

The last witness for the defense was Gene Arnett, another inmate in the segregation unit at Pontiac. Arnett stated he (1) was three cells down from defendant, (2) heard defendant arguing with nurse Dieterle, and (3) saw "something" come out of defendant's cell through his mirror. Arnett also testified that approximately five minutes after the incident he "overheard" Dieterle tell the lieutenant she did not need to change clothes because it was only water and would dry.

In rebuttal, Officer Montgomery stated after the incident he called on the radio to the "cage," and they informed the lieutenant he and Dieterle had a problem. Montgomery also stated he and Dieterle finished their rounds in the segregation unit, and Dieterle told him she thought defendant had thrown urine on them and she was going to go back and change. Later, Montgomery went to the medical unit to confer with Dieterle and to have a blood test, and Dieterle had already scrubbed down with bleach and changed into her "hospital blues." Montgomery then also scrubbed down with bleach and was blood tested. Montgomery testified he did not have a conversation with Lieutenant Johansen during that time period.

■ Battery is defined as when a person "knowingly without legal justification and by any means *** (2) makes physical contact of an insulting or provoking nature with an individual." 720 ILCS 5/12—3(a)(2) (West 1994). Here, defendant was charged with aggravated battery because he had committed battery upon correctional employees engaged in their official duties. 720 ILCS 5/12—4(b)(6) (West 1994).

Essentially, defendant contends the throwing of a liquid substance cannot amount to "physical contact" within the meaning of section 12—3(a)(2) of the Code. Apparently, defendant contends there must be some kind of direct touching for physical contact to occur. We disagree.

■ Initially, we conclude the evidence was sufficient for the jury to find that defendant threw urine, not water, on Montgomery and Dieterle. We further conclude the throwing of urine, or water, onto

another under these circumstances amounts to "physical contact of an insulting or provoking nature" (720 ILCS 5/12—3(a)(2) (West 1994)).

The instant case is analogous to *People v. Peck*, 260 Ill. App. 3d 812, 814, 633 N.E.2d 222, 223 (1994), where this court held that there, spitting in the face of a police officer amounted to aggravated battery. In so holding, this court noted that section 12—3(a)(2) of the Code specifically defined battery as physical contact "by any means" that is sufficiently "insulting or provoking." 720 ILCS 5/12—3(a)(2) (West 1994). Further, this court recognized that the committee comments to section 12—3 of the Code referred to "spitting in prosecuting witness' face" as an act that supported an aggravated battery conviction in light of the "by any means" language. 720 ILCS Ann. 5/12—3, Committee Comments-1961, at 250 (Smith-Hurd 1993).

Here, defendant contends that, because the committee comments list only spitting in the face as physical contact "by any means," other than direct contact, no other act of throwing or projection can amount to battery. This comment, however, was illustrative, not exclusive. There is no reason to believe that an act analogous to spitting saliva, such as throwing urine, would not also amount to battery. Defendant does not argue that the throwing of urine, or, for that matter, even water, under the circumstances is not sufficiently insulting or provoking behavior.

■ Finally, defendant contends the court erred in allowing, over objection, the testimony of Lieutenant Johansen that immediately following the incident defendant threatened to throw urine or excrement at any officer who walked by his cell if Johansen "stripped out" his cell. Defendant contends Johansen's testimony was inadmissible as (1) hearsay and (2) evidence of other acts admitted solely for the purpose of showing his propensity to commit the crime for which he was now on trial.

Initially, we conclude Johansen's testimony concerning defendant's statements was not hearsay. Johansen merely testified as to what defendant said contemporaneous to the "strip out" of his cell. Defendant's statement was not offered to prove the truth of the matter asserted. See M. Graham, Cleary & Graham's Handbook of Illinois Evidence § 801.1, at 632 (6th ed. 1994). Even if it was hearsay, it would have been admissible as the admission of a party opponent. M. Graham, Cleary & Graham's Handbook of Illinois Evidence § 802.1, at 669 (6th ed. 1994). Furthermore, although defendant's statement had some prejudicial effect, it also had some probative value as it tended to show that, in fact, defendant threw urine and not water at Montgomery and Dieterle, which was a material issue

at trial. Considering the overwhelming evidence that defendant committed aggravated battery by at least throwing water at Montgomery and Dieterle in an insulting and provoking manner, any error in the admission of Johansen's testimony did not amount to reversible error.

For the reasons stated, we affirm.

Affirmed.

STEIGMANN, P.J., and McCULLOUGH, J., concur.