In the
United States Court of Appeals
For the Seventh Circuit

No. 99-3612

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

PAUL TALIAFERRO,

Defendant-Appellant.


Appeal from the United States District Court
for the Western District of Wisconsin.
No. 99 CR 42--John C. Shabaz, Chief Judge.


Argued March 1, 2000--Decided May 1, 2000


   Before ESCHBACH, COFFEY and Diane P. WOOD, Circuit
Judges.

   COFFEY, Circuit Judge.  While Paul Taliaferro was
serving a 70-month sentence for armed robbery, he
pled guilty to possession of marijuana by an
inmate in violation of 18 U.S.C. sec. 1791(a)(2)
and (d)(1)(B). As part of the plea agreement, he
stipulated to assaulting a federal officer in
violation of 18 U.S.C. sec. 111(a)(1) after
throwing a cup of urine into a prison guard's
face, and upon his chest and arm. Taliaferro was
sentenced to a consecutive 30-month term of
imprisonment, three years' supervised release,
and special assessment of $100. On appeal,
Taliaferro challenges: 1) the denial of a two-
level downward adjustment for acceptance of
responsibility; and 2) the three-level upward
adjustment he received because the assault
involved physical contact with the prison guard.
We affirm.

   In September 1998, Taliaferro, while confined,
was visited in prison by his girlfriend, Deanna
Gary. Believing that Gary had slipped contraband
to Taliaferro during a kiss, prison authorities
placed him in a dry-cell./1 After three days in
the dry-cell, Taliaferro "passed" a plastic bag
containing 0.72 grams of marijuana. Upon
interrogation, Taliaferro claimed that he
received the marijuana from a fellow inmate, not
from Gary.

After Jones passed the plastic bag of marijuana, he was placed in a disciplinary segregation unit. This "discipline" apparently had little effect on Taliaferro because, while in the segregation unit, he threw a cup of urine on a prison guard--striking him in the face, chest, and arm.

On July 21, 1999, Taliaferro pled guilty to a one-count indictment charging him with possession of marijuana by an inmate. In the plea agreement, Taliaferro also stipulated to assaulting a federal officer, in violation of 18 U.S.C. sec. 111(a)(1), by throwing a cup of urine into the guard's face, and upon his chest and arm. Under U.S.S.G. sec. 2A2.4, the assault carries a base offense level of six and, if the "conduct involved physical contact," a three-level upward adjustment./2 As part of the plea agreement, the government agreed to recommend that Taliaferro receive a reduction in offense level for acceptance of responsibility. However, the plea agreement also recited that "the United States [was] free to withdraw this recommendation if the defendant . . . engages in any conduct between the date of this plea agreement and the sentencing hearing which is inconsistent with acceptance of responsibility."

On August 10, 1999, before his sentencing hearing, Taliaferro filed a two million dollar "Claim for Damage, Injury or Death" against the Bureau of Prisons alleging that, although he was guilty of possessing marijuana, he had received the drugs from another inmate rather than from Gary. The prison claim form that Taliaferro filed warned him that he could be subjected to civil and criminal penalties for filing a false claim. In the complaint, Taliaferro alleged that he had wrongfully been denied visits with Gary since the marijuana incident and that this had caused him mental and emotional injury. But, just two weeks after he filed his tort claim, Taliaferro admitted to his probation officer that it was his girlfriend, Gary, who had given him the marijuana.

Based on the belief that Taliaferro's filing of a two million dollar tort claim in which he denied receiving the marijuana from Gary was inconsistent with the proposition that he accepted responsibility for his conduct, the government withdrew its recommendation that Taliaferro receive a reduction for acceptance of responsibility.

At sentencing, the government objected to the recommendation in the Presentence Investigation Report (PSR) that Taliaferro receive a downward

adjustment for acceptance of responsibility./3 The judge agreed that Taliaferro was not entitled to a downward adjustment, stating that Taliaferro's claim against the Bureau of Prisons amounted to a falsehood that demonstrated a lack of acceptance of responsibility. The sentencing judge went on to state that even if the government had not withdrawn its recommendation he would have denied the reduction for acceptance of responsibility on his own. The trial judge also rejected Taliaferro's argument that throwing a cup of urine did not amount to "physical contact" with the guard and adjusted Taliaferro's base offense level by three levels under section 2A2.4(b)(1), stating that throwing a cup of urine "certainly must be considered an act of physical contact."

On appeal, Taliaferro argues that he was entitled to a downward adjustment for acceptance of responsibility because, even though he filed a false claim and lied to the court, he demonstrated his acceptance by pleading guilty, admitting the facts underlying his drug offense at sentencing, and withdrawing his tort claim. That is, according to Taliaferro, the fact that he was honest at the time of sentencing should provide sufficient grounds for reducing his offense level for acceptance of responsibility. Contrary to Taliaferro's assertions, acceptance of responsibility requires much more than mere honesty at his sentencing hearing.

This court reviews a district court's finding for clear error as to whether a defendant has accepted responsibility for his criminal activity. See United States v. Sierra, 188 F.3d 798, 804 (7th Cir. 1999). The mere fact that a defendant enters into a plea agreement is insufficient under the guidelines and caselaw to entitle him to a downward adjustment; rather, the defendant has the burden of demonstrating that he has actually accepted responsibility for his actions. See United States v. McIntosh, 198 F.3d 995, 999 (7th Cir. 2000). We have long held that a defendant does not demonstrate sufficient acceptance of responsibility when he, as Taliaferro did in this case, frivolously contests or falsely denies relevant conduct. See United States v. Larkin, 171 F.3d 556, 558 (7th Cir.), cert. denied, 120 S. Ct. 198 (1999).

Based on the record, we are convinced that the district court's conclusion that Taliaferro should not receive a reduction for acceptance of responsibility was not clearly erroneous. First, Taliaferro filed a fraudulent two-million dollar "Claim for Damage, Injury or Death" knowing that the government would withdraw its recommendation that he receive a downward departure for

acceptance of responsibility. And, as we have long held, lying, as the filing of the false tort claim must be considered, is, in and of itself, sufficient grounds for denying acceptance points. See United States v. Gage, 183 F.3d 711, 717 (7th Cir. 1999) (false representation at plea hearing); United States v. Colbert, 172 F.3d 594, 597 (8th Cir. 1999) (defendant sent letter to district court partly denying stipulated conduct); United States v. Dillard, 43 F.3d 299, 306 (7th Cir. 1994) (submission of false statement to probation officer). Furthermore, we note that the fact that Taliaferro waited until sentencing to inform the judge that his tort claim was false suggests that he was motivated not by a true acceptance of responsibility but rather by the thought that he might get a lower sentence if he withdrew his tort claim; a basis which does not entitle a defendant to a reduction for acceptance of responsibility. See United States v. Purchess, 107 F.3d 1261, 1269 (7th Cir. 1997). Consequently, we agree with the trial court's ruling that Taliaferro was not entitled to a reduction for acceptance of responsibility.

Taliaferro also challenges the three-level upward adjustment he received for physical contact with the prison guard. On appeal, Taliaferro does not dispute that his actions constituted an assault under 18 U.S.C. sec. 111(a)(1), but argues that he should not be subjected to the upward adjustment under section 2A2.4(b)(1) for conduct that involved physical contact; an adjustment that is analogous to battery. In so arguing, Taliaferro notes that the guidelines fail to define "physical contact" and claims that the provision only applies if there is "actual physical contact between the defendant and the complaining witness." Taliaferro asserts that throwing a liquid on someone is an "intermediate action" that does not involve actual physical contact and therefore he should not receive the upward adjustment./4

A district court's interpretation of the guidelines is reviewed de novo. See United States v. Turchen, 187 F.3d 735, 738 (7th Cir. 1999). In the absence of a definition of a term in the guidelines, courts are to look to the common-law definition or the plain meaning of the term. See id. at 739; United States v. Haynes, 179 F.3d 1045, 1047 (7th Cir.), cert. denied, 120 S. Ct. 386 (1999).

We are of the opinion that the throwing of an offensive liquid such as urine upon another person does amount to "physical contact" for the purposes of section 2A2.4(b)(1). Although no federal court has defined "physical contact" as used in subsection (b)(1), the meaning can be

derived by examining at the law of battery. While battery is defined as "intentional and wrongful physical contact with a person," see Black's Law Dictionary 152 (6th ed. 1990), it is clear that the contact between the aggressor and the victim need not be direct, but rather can result from the "indirect application of force . . . by some substance or agency placed in motion by" the aggressor. See 6A C.J.S. Assault and Battery sec. 70 at 440-42 (1975). For example, spitting on another person has long been held to constitute a battery. See United States v. Masel, 563 F.2d 322, 324 (7th Cir. 1977) ("It is ancient doctrine that intentional spitting upon another person is battery."); see also United States v. Frizzi, 491 F.2d 1231, 1232 (1st Cir. 1974); Missouri v. Mack, 2000 WL 154330 (Mo. Ct. App., Feb. 15, 2000); People v. Peck, 633 N.E.2d 222, 224 (Ill. App. Ct. 1994). Furthermore, at least two state courts have also held that throwing urine on someone constitutes the physical contact necessary for a battery. See People v. Walker, 683 N.E.2d 1296, 1301 (Ill. App. Ct. 1997); State v. Matthews, 633 P.2d 1039, 1042 (Ariz. Ct. App. 1981). Accordingly, we agree with the trial judge that the defendant's action, throwing a cup of urine on a prison guard, amounts to "physical contact" with the prison guard, and therefore the three-level upward adjustment was warranted.

Taliaferro's sentence is

AFFIRMED.


/1 A dry cell is a unit that has a commode with no running water so that bodily waste material can be captured for inspection. Prison employees observe the prisoner in the dry cell until the contraband is recovered.

/2 In choosing between the guideline calculations for marijuana or assault, the district court, as required by U.S.S.G. sec. 1B1.2(a), used the section for assault because, after the upward adjustment for "physical contact" was applied, the assault stipulation in the plea agreement was "a more serious offense" than the offense of conviction; that is, the assault had a higher offense level than the marijuana charge. See U.S.S.G. sec.sec. 1B1.2(a), 2A2.4; see also U.S.S.G. sec. 1B1.2, Application Note 1 ("Where a stipulation that is set forth in a written plea agreement or made between the parties on the record during a plea proceeding specifically establishes facts that prove a more serious offense or offenses than the offense or offenses of conviction, the court is to apply the guideline most applicable to the more serious

offense or offenses established.").

/3 The PSR was prepared before Taliaferro filed his fraudulent tort claim; thus, the probation officer was in no position to consider this fact at the time he recommended that the defendant receive a downward adjustment.

/4 We wonder if Taliaferro would have made the same "intermediate action" argument (that is, he is not responsible for physical contact with the prison guard because he was not touching the urine when it struck the guard) if he had shot the prison guard with a gun or thrown a rock or other solid object at the guard. Given that his claim is without support in the law, we only use these examples as illustrations as to the frivolous nature of his claim.