THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ERNEST BRACEY, Defendant-Appellant.

Fourth District    No. 4—02—0669

Argued August 28, 2003.—Opinion filed December 10, 2003.

Michael J. Pelletier and Marie F. Donnelly (argued), both of State Appellate Defender's Office, of Chicago, for appellant.

Thomas J. Brown, State's Attorney, of Pontiac (Norbert J. Goetten, Robert J. Biderman, and Kathy Shepard (argued), all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE MYERSCOUGH delivered the opinion of the court:

In July 2000, the trial court found defendant, Ernest Bracey, guilty of aggravated battery (720 ILCS 5/12—4(b)(6) (West 2000)). In August 2000, the court sentenced defendant to two years' imprisonment to run consecutive to the sentence he was then serving. Defendant appeals, arguing that (1) his rights to a jury trial and due process of law were violated when the court proceeded with a bench trial without any indication that he knowingly, voluntarily, and intelligently waived his right to a jury trial; and (2) he was not proved guilty beyond a reasonable doubt. We affirm.

## I. BACKGROUND

In February 2002, the grand jury indicted defendant for committing aggravated battery to a correctional institution employee who was engaged in the execution of his official duties. 720 ILCS 5/12—4(b)(6) (West 2000). On March 6, 2002, defendant made his first appearance, and the trial court appointed counsel for defendant. On March 20, 2002, defendant's counsel informed the court that defendant wished to waive his right to a jury trial. The court admonished defendant that he had a right to a jury trial. Defendant executed a written jury waiver, and the court found defendant's waiver to be knowing and voluntary.

In April 2002, the trial court conducted a bench trial. The State presented its evidence and rested. Defense counsel then stated that he did not wish to present any evidence. The court found defendant guilty of aggravated battery and asked defendant if he had any questions. Defendant indicated that he never stated that he did not want to testify. He wanted to "tell [his] side of the story." The court found that it should have inquired of defendant whether he wanted to testify, vacated its guilty finding, and set the matter for trial in front of another judge.

On July 17, 2002, the trial court called defendant's case, and the following transpired:

"THE COURT: This is [No.] 02—CF—18. Mr. Jackson for the State. Defendant with Mr. Ahlemeyer. Cause comes on for bench trial. I just verified to be sure that there was a jury waiver taken, I see that there was by Judge Frobish back on March 20 of 2002. So anything, Mr. Jackson, before we start with the evidence?

MR. JACKSON [Assistant State's Attorney]: No, [y]our Honor.

THE COURT: Mr. Ahlemeyer?

MR. AHLEMEYER [defense counsel]: No, [y]our Honor."

The State then called its first witness, John Deal. Deal testified that he had been a correctional officer at Pontiac Correctional Center (Pontiac) since September 2000. On November 30, 2000, Deal was escorting an inmate from the library back to his cell at approximately 12:15 p.m. Deal always positions the inmate that he escorts farthest áway from the cell. For example, if the door is on the left, he places the inmate on the right, and he usually is approximately $1^{1}/_{2}$ to 2 feet behind the inmate. As he passed defendant's cell, he was splashed with a liquid substance that smelled like apple juice. The substance hit him in the left arm. He was somewhat disturbed because he wanted to determine whether anything harmful was in the substance. He further testified that he was insulted by the incident, which was something that did not occur on a regular basis. Deal concluded that the liquid was directed at the inmate he was escorting because the majority of the liquid splashed on the inmate but some of the liquid had also splashed on him.

Defendant's cell door was perforated steel with holes approximately an inch in diameter and an eighth of an inch apart through which defendant can look. Deal testified that if an inmate looks out the cell, he can see six or seven cells down and can see someone walking fairly clearly. Deal further testified that defendant said that the liquid was not meant for Deal.

Jack Libby, a correctional officer at Pontiac, testified that he investigated the incident involving Deal and defendant. Defendant

admitted to Libby that defendant struck Deal with a liquid substance, but he stated that it was an accident. Defendant was trying to hit the inmate Deal was escorting. The State rested.

Defendant testified that he threw some apple juice through his perforated cell door. He did not intend to hit Deal. Defendant admitted that he thought that the juice might "splash on [Deal]," but defendant did not know for sure whether it would. On cross-examination, defendant admitted that he was aware that the correctional officer would have been walking pretty close behind the inmate being escorted. Defendant also admitted that he knew that if he threw apple juice through his cell door that it might hit the correctional officer because of where the correctional officer would have been in relation to the inmate.

The defense rested. After closing arguments, the trial court found defendant guilty of aggravated battery. Specifically, the court stated:

> "From the evidence, no question, [defendant] knew that the officer would be with [the inmate] as the defendant testified[.] *** [A]s the defendant himself said on direct he thought it might splash on Deal. But he really intended—or not intended—he wanted to hit [the inmate], but he knew it might splash on Deal. ***
>
> I mean, that is a fact that [defendant] had to be—had to be consciously aware of. Like he even said, it might have splashed. He wasn't even worried about it, didn't pass through his mind. So I would think given those facts, a person would be consciously aware of it, it is going to hit the guy next to him right behind the inmate and it did."

After the sentencing hearing, the trial court sentenced defendant as stated.

This appeal followed.

## II. ANALYSIS

Defendant argues that his rights to a jury trial and due process of law were violated when the trial court proceeded with the second bench trial prior to determining whether he had knowingly, voluntarily, and intelligently waived his right to a jury trial. Specifically, defendant contends that his jury waiver at the first bench trial was expended when that trial concluded and the court vacated its finding of guilt. Defendant argues that the record does not contain a written waiver, an inquiry, or admonishment about his right to a jury trial for his second trial. Therefore, his conviction must be reversed. The State argues defendant forfeited his right to raise this issue because he failed to raise this issue in the trial court and in a posttrial motion. The State argues further that the issue is not reviewable under the plain error doctrine because the evidence was not closely balanced and

any error was not of such magnitude that defendant was denied a fair and impartial trial, and remedying the error is not necessary to preserve the integrity of the judicial process. The State also argues that defendant validly waived his right to a jury trial before his retrial.

## A. Plain Error Doctrine

■ The record is clear that defendant raises this issue for the first time on appeal. Ordinarily, errors not objected to during trial or raised in the posttrial motion are considered forfeited. *In re R.A.B.*, 197 Ill. 2d 358, 362, 757 N.E.2d 887, 890 (2001); *People v. Enoch*, 122 Ill. 2d 176, 190, 522 N.E.2d 1124, 1131-32 (1988). The plain error doctrine, however, permits review of claimed errors not brought to the attention of the trial court in two limited circumstances: (1) where the evidence is closely balanced; or (2) when the errors are of such magnitude that defendant was denied a fair and impartial trial and remedying the error is necessary to preserve the integrity of the judicial process. *R.A.B.*, 197 Ill. 2d at 363, 757 N.E.2d at 890-91. Because this case concerns the knowing waiver of the fundamental right to a jury trial, we will consider this issue under the plain error doctrine. See *R.A.B.*, 197 Ill. 2d at 363, 757 N.E.2d at 891 (court considered issue under plain error doctrine because the case dealt with the knowing waiver of the fundamental right to a jury trial).

## B. Valid Jury Waiver

■ The issue in this case involves whether defendant knowingly waived his right to a jury trial. Because the facts are not questioned, the issue is a question of law, and our review is *de novo*. *R.A.B.*, 197 Ill. 2d at 362, 757 N.E.2d at 890. Both the United States Constitution and the Illinois Constitution provide for jury trials in criminal cases. U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, §§ 8, 13. The decision whether to waive a jury trial ultimately belongs to the defendant. *People v. Segoviano*, 189 Ill. 2d 228, 240, 725 N.E.2d 1275, 1280-81 (2000).

To be a valid jury waiver, it must be knowingly and understandingly made. *R.A.B.*, 197 Ill. 2d at 364, 757 N.E.2d at 891. A determination of whether a jury waiver is valid cannot rest on any precise formula but depends on the facts and circumstances of each particular case. *R.A.B.*, 197 Ill. 2d at 364, 757 N.E.2d at 891. No specific admonition or advice is required before an effective jury waiver may be made. *R.A.B.*, 197 Ill. 2d at 364, 757 N.E.2d at 891.

Before defendant's first trial, the court admonished him regarding his right to a jury trial and the following colloquy occurred:

"THE COURT: *** This case comes on for a pre[ ]trial. The posture of the case, Mr. Ahlemeyer, is what?

MR. AHLEMEYER [defense counsel]: I believe we are going to waive jury, [y]our Honor.

THE COURT: All right. [Defendant], a waiver of right to jury trial is presented to you there. You do have a right to a jury trial and the State would have to convince 12 jurors you are guilty beyond a reasonable doubt. If you execute that jury waiver, then you won't have a jury trial and the State will have to convince me beyond a reasonable doubt that you are guilty of the offense charged which is alleged to be aggravated battery. So if you want a bench trial, then we would like you to sign that it is your decision.

All right. Show that [defendant] has executed a written jury waiver. [Defendant] do you waive your right to a jury trial and consent to a bench trial?

THE DEFENDANT: Yes, sir.

THE COURT: All right. I find the waiver to be knowingly and voluntarily accomplished."

The record demonstrates that defendant orally waived his right and executed a written jury waiver in open court. The State, defense counsel, and defendant were present at the second trial. In July 2002, at the beginning of the second trial, the trial court specifically addressed the jury waiver issue as previously quoted. The State and defense counsel informed the court that nothing further need be addressed. Further, defendant was present at and participated in the second trial, and the court and counsel intended for the matter to proceed to a bench trial. The determination of whether a jury waiver was made understandingly turns on the facts and circumstances of each particular case. *People v. Tooles*, 177 Ill. 2d 462, 469, 687 N.E.2d 48, 51 (1997). While the better practice would have been for the trial court to specifically address defendant and confirm that defendant desired to waive jury trial, we find no error here. Considering the facts that the earlier jury waiver was discussed in defendant's presence and defendant silently acquiesced in the court's and counsel's statements made in his presence on the day of trial, we conclude that the jury waiver was made with defendant's knowledge and consent.

Further, upon reviewing the court's comments and counsel's responses, we conclude that defendant's attorney, in defendant's presence and in open court, in effect reasserted his jury waiver. See *People v. Frey*, 103 Ill. 2d 327, 332, 469 N.E.2d 195, 197 (1984) (where the supreme court held that an accused typically speaks and acts through his attorney, and a jury waiver is valid when made by defense counsel in defendant's presence where defendant gave no indication of any objection to the court hearing the case).

By contrast, in *People v. Johnson*, 222 Ill. App. 248 (1921), the defendant was charged with larceny and, by agreement, the case was

submitted to the court. After a trial, the court found the defendant guilty and sentenced him. The defendant moved to vacate the judgment. The following day, the court vacated the judgment and, on the defendant's motion, granted a new trial. Immediately thereafter, the defendant was again arraigned. The case was submitted to the same judge for trial without a jury, and the defendant was represented by counsel. After hearing testimony, the court found the defendant guilty and sentenced him. The defendant appealed, arguing, in part, that the court should not have entered judgment after the second bench trial because the defendant had not executed a new written jury waiver. The appellate court agreed. The court noted that the transcript of the second proceeding did not disclose that the defendant signed or gave a new written jury waiver and, therefore, concluded that the judgment of the second trial could not stand because "it does not appear that the defendant executed 'a formal waiver in writing' of a trial by jury." *Johnson*, 222 Ill. App. at 251. The court went on to state: "We think that the previous written waiver executed by [the defendant] prior to commencement of the first trial was exhausted after that trial had been had and a new trial awarded." *Johnson*, 222 Ill. App. at 251. In contrast to the present case, nothing in *Johnson* indicated that a jury waiver was discussed in open court in the defendant's presence prior to the commencement of the second trial. In the present case, the record clearly indicates that the jury waiver was discussed in defendant's presence, and the parties informed the court that no other issues needed to be addressed before the second trial.

Similarly, *People v. Watson*, 246 Ill. App. 3d 548, 616 N.E.2d 649 (1993), is distinguishable. In *Watson*, at a pretrial hearing, where the defendant was not present, defense counsel indicated to the trial court that the defendant wanted a bench trial, but noted that the defendant's jury waiver would have to be obtained prior to trial. The court agreed that it would be necessary to obtain the defendant's jury waiver prior to trial. The case later proceeded to a bench trial after which the court found the defendant guilty. The defendant appealed, arguing that his convictions should be reversed and the cause remanded for a new trial because the record failed to show that he knowingly waived his right to a jury trial. The appellate court agreed, reversed, and remanded, reasoning as follows:

> "Vague references to a bench trial at the rescheduling conferences were not sufficient to constitute a valid jury waiver, especially in light of the fact that the record is devoid of evidence suggesting that the defendant was ever apprised of his right to a jury trial. Under these circumstances, we are unable to say that the defendant waived his right to a jury trial." *Watson*, 246 Ill. App. 3d at 549, 616 N.E.2d at 649.

In the present case, however, the record contains more than simply a "vague" reference to a bench trial at a rescheduling conference where the defendant was not present and no mention of a jury waiver was made at the time of trial.

In *People v. Scott*, 186 Ill. 2d 283, 285, 710 N.E.2d 833, 834 (1999), the supreme court held that the defendant did not validly waive his right to a jury trial in open court. The defendant there executed a written jury waiver in his attorney's office, which was later filed outside defendant's presence. The jury waiver stated that the defendant had "until the last Thursday of December[ ] 1994 to revoke this waiver of jury trial." *Scott*, 186 Ill. 2d at 285, 710 N.E.2d at 834. Sometime after, on the day of trial and in the defendant's presence, the defendant's counsel informed the court that " 'we would proceed to the bench trial today.' " The court stated " 'Okay, appreciate that., [*sic*] okay. We will then proceed with the bench trial. [Prosecutor], you may proceed.' " *Scott*, 186 Ill. 2d at 284, 710 N.E.2d at 833.

The supreme court acknowledged its holding in *Frey* that an accused typically speaks and acts through his attorney and a jury waiver is valid when made by defense counsel in defendant's presence where defendant has given no indication of objection to the court hearing the case. *Scott*, 186 Ill. 2d at 285, 710 N.E.2d at 834, citing *Frey*, 103 Ill. 2d at 332, 469 N.E.2d at 197. However, the supreme court in *Scott* found that it was undisputed that the defendant was never present in open court when a jury waiver was discussed. The court also found that the defendant's silence on the day of trial did not amount to an " 'acquiescence,' " on the issue but, rather, his silence "may have been due to his belief that it was too late to revoke his jury waiver," given the language of the waiver. *Scott*, 186 Ill. 2d at 285, 710 N.E.2d at 834. The supreme court noted that the references to proceeding with a bench trial were made during a discussion concerning a motion to dismiss and were merely the defendant's attorney informing the court that despite the pending motion to dismiss, defendant was ready to proceed. *Scott*, 186 Ill. 2d at 285-86, 710 N.E.2d at 834. The court found, therefore, that defendant never acknowledged the written jury waiver in open court, either affirmatively or through his silence. *Scott*, 186 Ill. 2d at 286, 710 N.E.2d at 834.

In contrast, in the present case, defendant was present in open court when he executed his jury waiver. In addition, defendant was also present in open court on July 17, 2002, when the trial court acknowledged the jury waiver in defendant's file and when the court and the attorneys discussed proceeding with the bench trial. Defendant never objected or informed the court that he wanted to withdraw his jury waiver.

Defendant contends that his silence could reasonably have been due to his belief that he could not revoke his jury waiver from the first trial, and that he was only entitled to a new bench trial, not a new trial by jury because of the trial court's comments at the first trial. We disagree. After reviewing the comments in context, we conclude that they further support the inference that defendant intended to and did knowingly and voluntarily waive his right to jury trial.

> "[THE COURT]: You are going to get another chance with another judge. And at that time if you want to testify, you will be able to testify. So this other judge won't know anything about the case.
>
> ***
>
> *** You will be brought back to the courthouse and you will appear before Judge Charles Frank.
>
> Do you have any question, [defendant]?
>
> THE DEFENDANT: No."

Moreover, defendant was certainly present in open court when the jury waiver was discussed—specifically, when he executed it and prior to the beginning of his second trial. Defendant was not one who did not understand the system or was shy when he disagreed with what was taking place. In fact, defendant's objection about not being able to testify in the first trial enabled him to have a second trial.

Defendant relies on *People v. Mixon*, 271 Ill. App. 3d 999, 649 N.E.2d 441 (1994), in support of his argument. We find *Mixon* distinguishable. In *Mixon*, the defendant filed a waiver of his right to have a jury trial. The trial court conducted a bench trial and found the defendant guilty of four counts of unlawful delivery. The defendant filed a posttrial motion, which the court granted and ordered a new trial. The defendant then filed a motion to withdraw his jury trial waiver. The court denied this motion, indicating that "it would not exercise its discretion in a manner that would allow defendant to use the first trial as a 'test' run." *Mixon*, 271 Ill. App. 3d at 1001, 649 N.E.2d at 442. The appellate court reversed, finding that the defendant's waiver applied only to the first trial, and the right of trial by jury remained available to the defendant for the second trial. *Mixon*, 271 Ill. App. 3d at 1003, 649 N.E.2d at 443-44.

■ Unlike *Mixon*, defendant here did not attempt to withdraw his jury waiver, an action that would clearly demonstrate he did not wish to waive his right to a jury trial. Rather, defendant's conduct demonstrated that he intended for his case to be heard by the judge and not the jury. Under the circumstances here, the record demonstrates that defendant was aware of his right to a jury trial and was present just prior to trial when the jury waiver was discussed. We

conclude, therefore, that the jury waiver was made with defendant's knowledge and consent.

## C. Sufficiency of the Evidence

Defendant argues that the State failed to prove beyond a reasonable doubt that he knowingly or intentionally made physical contact of an insulting or provoking nature with a correctional officer. Specifically, defendant contends that the evidence does not demonstrate that when he threw the juice at the inmate, defendant was "practically certain" that the juice would splash on the correctional officer. Defendant further contends that "getting accidentally splashed on the arm with a few drops of juice is not the 'insulting or provoking physical contact' required by the aggravated battery statute." We disagree.

■ The relevant question here is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Cox*, 195 Ill. 2d 378, 387, 748 N.E.2d 166, 172 (2001). Battery occurs when a person "knowingly without legal justification and by any means *** (2) makes physical contact of an insulting or provoking nature with an individual." 720 ILCS 5/12—3(a)(2) (West 2000). In the present case, defendant was charged with aggravated battery because he had committed battery upon a correctional officer engaged in his official duties. See 720 ILCS 5/12—4(b)(6) (West 2000).

■ Defendant threw a liquid substance out his cell door, some of which splashed on Deal. Deal testified that he was insulted by the incident and disturbed because he was not sure if the substance contained anything harmful. Defendant admitted that he knew that there was a chance the liquid would hit Deal. We conclude that defendant's conduct could easily reach "physical contact of an insulting or provoking nature" (720 ILCS 5/12—3(a)(2) (West 2000)), and it was committed upon a correctional officer engaged in his official duties (720 ILCS 5/12—4(b)(6) (West 2000)).

The present case is analogous to *People v. Walker*, 291 Ill. App. 3d 597, 602, 683 N.E.2d 1296, 1299-1300 (1997), where an inmate threw a liquid substance out his cell at a correctional officer and a nurse. The substance hit both. *Walker*, 291 Ill. App. 3d at 602, 683 N.E.2d at 1300. This court concluded that the throwing of urine, or water, onto another under those circumstances amounted to " 'physical contact of an insulting or provoking nature.' " *Walker*, 291 Ill. App. 3d at 603-04, 683 N.E.2d at 1301, quoting 720 ILCS 5/12—3(a)(2) (West 1994); see *People v. Peck*, 260 Ill. App. 3d 812, 813-14, 633 N.E.2d 222, 223-24 (1994) (there, this court held that spitting in the face of a police officer

amounted to aggravated battery, noting that section 12—3(a)(2) defined battery as physical contact "by any means" that is sufficiently "insulting or provoking" (720 ILCS 5/12—3(a)(2) (West 2000))).

Although we can envision contexts in which throwing apple juice might not constitute insulting or provoking behavior, defendant's throwing apple juice from the inside of his cell onto an unsuspecting correctional officer, who was not sure of the nature of the substance or whether it contained anything harmful, clearly amounts to an insulting or provoking contact, and defendant was practically certain the correctional officer would be hit with the substance, as well as the targeted inmate.

## III. CONCLUSION

For the foregoing reasons, we affirm the trial court's judgment.

Affirmed.

STEIGMANN, J., concurs.

PRESIDING JUSTICE KNECHT, dissenting:

I respectfully dissent. The cases cited and discussed by the majority are interesting, but they simply do not address the issue present here. A defendant need not withdraw a jury waiver that no longer exists. It should not be inferred the defendant waived a jury or reasserted his jury waiver.

Defendant's waiver of jury applied to his first trial. His fundamental right to a jury trial was once again on the table. Our system requires a defendant to be admonished, to be inquired of, and then to affirmatively and knowingly waive his right to a jury trial.

Perhaps this defendant has frustrated the system. His first guilty finding was vacated because he asserted he wanted to "tell his side of the story," and the trial court had not inquired of him whether he wanted to testify. At his second bench trial, he testified but was convicted.

Now, he asserts what may be a tactical ploy. If we start anew, it is possible he will waive jury and be found guilty a third time. It is arguably a waste of resources to reverse and remand. Perhaps defendant knew what was going on and now seeks to take advantage of errors in the record.

Instead of surmising what defendant may be doing or may have known, I prefer to focus on what the prosecutor, the defense attorney, and the judge are presumed and required to know—a defendant should be properly admonished, and the court should then determine if any

affirmative waiver—not inferences from what has happened before—is a knowing, voluntary, and intelligent waiver. The process failed. To reverse and remand is not to reward defendant but to honor a clear and fundamental right and a clear and simple process.