# In the

# United States Court of Appeals

## For the Seventh Circuit

———————

No. 05-2489

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

BABETTE DAVIS,

*Defendant-Appellant.*

———————

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 04 CR 24—**Charles N. Clevert, Jr.**, *Judge.*

———————

ARGUED DECEMBER 5, 2005—DECIDED MARCH 30, 2006

———————

Before POSNER, KANNE, and SYKES, *Circuit Judges.*

KANNE, *Circuit Judge.* Babette Davis pled guilty to one count of tax fraud and appeals the district court's order requiring her to be taken into custody after the first day of her two-day sentencing hearing. Davis also appeals the district court's enhancement of her sentence for obstruction of justice, its denial of a downward adjustment for acceptance of responsibility, and claims that her sentence is otherwise unreasonable. For the following reasons, we affirm.

## I. BACKGROUND

Babette Davis devised a scheme to obtain tax refunds by filing falsified federal tax returns. The mechanics of the fraud were simple: Use W-2 Forms to overstate wages, taxes withheld, and the number of dependants, in order for the participants to claim larger refunds from the IRS than they otherwise would be entitled. In addition, the scheme caused many of the participants to become eligible for the Earned Income Credit which increased the amount of the returns by around $3,000 apiece.

Between 1997 and 2001, 32 false returns were filed by 25 participants, most of whom were close relatives and friends of Davis residing in the Milwaukee area. The scheme claimed refunds totaling $136,635, of which the IRS paid $61,745 before detecting the fraud.

At first, the participants provided Davis with their W-2 Forms, which Davis then altered. As the fraud progressed over time, Davis began to use blank W-2 Forms. She supplied the participants with wage and withholding amounts as well as personal information for made-up dependants. Davis suggested to participants that they file their tax returns at particular H&R Block locations. The participants usually filed their returns electronically and then applied for refund anticipation loans from H&R Block. While awaiting the loan disbursements, Davis maintained a watchful eye, sometimes calling H&R Block to learn the loans' status, and also accompanying participants to pick up the loan checks and cash them.

As the mastermind, Davis took a portion of the funds as a fee for her "services," ranging from $500 up to half the value of the refund. Davis was also a participant in the fraud, having filed false claims on her own tax returns for 1997 and 1998. Several patterns emerged in the scheme's execution, causing the IRS to open an investigation. IRS

agents met with Davis in July 2002. Davis denied responsibility for the scheme and told the agents that Bo McAfee (by that time deceased) and Lisa Leonard prepared her false W-2 Forms for 1997 and 1998. In fact, Davis had prepared them.

Through re-investigation, IRS agents learned that one of the ringleaders was known as "Miss T," but they did not know Miss T's true identity. Suspecting Davis was more heavily involved than she previously let on, IRS agents, including IRS Special Agent Brandon Bielke, interviewed her three times in August 2002. During these meetings Davis identified Michael Wimpy as the scheme's orchestrator and also stated that Wimpy was Miss T. Davis said that Wimpy falsified the W-2 Forms and that her only involvement was to provide transportation for Wimpy as he delivered the forms to the participants. Davis also claimed she was looking for Wimpy—to assist in the investigation.

Davis's revelations of Wimpy led Bielke to interview other participants and conduct his own research. Beginning his inquiry without having the correct spelling of Wimpy's name, Bielke identified several subjects with the same name. Bielke searched Social Security and IRS records to determine which among them was the person Davis had referenced.

Bielke learned that Wimpy had suffered from AIDS since at least 1998 and was very ill while the scheme took place. Wimpy resided in Minnesota from 1999 to 2000 and then moved to Milwaukee in 2000 to live with his sister, Theresa Shumpert. According to Shumpert, Wimpy did not know how to prepare income tax returns, and she had never heard him mention income taxes nor had she seen him with any tax returns or W-2 Forms. Based upon Wimpy's illness, his whereabouts, and the lack of any corroborating evidence, Bielke concluded that Wimpy had nothing to do with

the scheme. Bielke also learned that Wimpy died in July 2002, and that Davis had attended his funeral.

In addition to lying to investigators, Davis sought assistance from participants to conceal her role. In the summer of 2000, after becoming aware of the investigation, Davis told participant Shamela Clark that she was under investigation by the IRS and instructed Clark not to mention her. However Clark admitted to authorities that Davis prepared her fraudulent W-2 Form. As the investigation was gaining momentum, during the summer of 2002, Davis urged participants Damen Olds and Dorothy Glenn to tell agents that Wimpy was the ringleader. Both refused and cooperated with the investigation. In all, 13 participants named Davis as the person responsible for the scheme, and several implicated Davis in her attempts to deflect the IRS's scrutiny.

On February 3, 2004, a grand jury returned an 11-count indictment, the first count charging Davis with conspiracy and the remaining counts charging her with filing false income tax returns. Pursuant to a written plea agreement, on April 27, 2004, Davis pled guilty to Count 2, which charged her with fraudulently filing her own tax return for the 1998 tax year in violation of 18 U.S.C. § 287 and § 2. In exchange, the Government agreed to dismiss the remaining counts at Davis's sentencing. Both sides agreed to dispute the amount of loss and any potential sentencing enhancements.

In the presentence report ("PSR"), the probation officer applied the 1998 version of the United States Sentencing Guidelines (the "Guidelines") and recommended Davis's sentence be enhanced under the Guidelines for loss, role, more than minimal planning, and obstruction of justice. The PSR also recommended that Davis not be given a downward adjustment for acceptance of responsibility. Davis objected to all of them. Davis's sentencing was

delayed for a year (apparently because of *Blakely/Booker* uncertainty) during which time she was free on bail and complied with the conditions of her bond.

On April 29, 2005, the sentencing hearing began. Scheme participants Dorothy Glenn and Angela Evans testified that Davis prepared fraudulent income tax returns for them and for other participants. Agent Bielke testified and summarized the scheme. Bielke also explained how Davis had blamed Wimpy and Bielke's subsequent inquiry. At the conclusion of Bielke's testimony, counsel for Davis requested the hearing be continued to another date for his cross-examination. The court agreed to do so but ordered Davis to be remanded into custody immediately, explaining:

> [G]iven what I've heard thus far and the objections which have been raised by the defense it is clear that the Court will be imposing a sentence of incarceration. Also, as I noted earlier, the defendant's demeanor during the course of this hearing leads me to conclude that it would be prudent for me to remand her to the custody of the U.S. Marshal pending the completion of the sentencing hearing . . . .

> I certainly understand that [Davis complied with the terms of her bail] and I am not aware of any significant violations at this time unless there is something that has occurred recently that has not been brought to my attention. But regardless, the Court is satisfied that if all of the objections of the defense are sustained it will still be necessary and appropriate that the defendant be remanded to the custody of the U.S. Marshal today. Whether or not the defendant will show up at other proceedings is of secondary concern. Of primary concern, however, is how the defendant will handle herself between now and those proceedings. And so it is my conclusion that this matter be concluded one way or the

other today by the defendant going into the custody of the U.S. Marshal.

On May 10, 2005, Davis's sentencing continued, and Bielke was cross-examined. The district court found that the obstruction enhancement was appropriate because Davis lied to investigators before her arrest, leading them on a "wild goose chase," and because Davis attempted to get other people to lie on her behalf. The court did not grant Davis a downward adjustment for acceptance of responsibility. With a total offense level of 21, and criminal history category of II, the court determined the applicable advisory guideline range to be 21 to 41 months' imprisonment. Then the court heard statements from Davis and her counsel. The court concluded:

> [T]he Court is mindful of its responsibility under Title 18 Section 3553 to take into account multiple factors in imposing a sentence. And, indeed, the Court has given thought to not only the impact of this offense on the U.S. Treasury and the community but also the need to deter others from engaging in similar conduct and the need to protect [Davis's foster children]. . . . It is also important in this Court's mind to exact an appropriate measure of punishment for Miss Davis's conduct. And I am especially mindful of the need to make clear that the obstruction which took place here has to result in a somewhat harsh penalty. Therefore, on the basis of the plea . . . it is the judgment of the Court after taking into consideration all of the factors as set forth in Title 18 Section 3553(a)(2) and also with due regard for the advisory guidelines that a sentence of 41 months be imposed . . . .

The court also ordered Davis's prison term to be followed by 3 years supervised release, the mandatory $100 special assessment, and $61,745 in restitution.

Davis raises four issues on appeal. First, Davis asserts that the district court's remand effectively constituted the

impermissible imposition of a sentence without calculating the Guideline range and violated her right of allocution. Second, Davis challenges her sentence enhancement for obstruction of justice. Third, Davis claims she was entitled to a downward adjustment for acceptance of responsibility. Finally, Davis claims her sentence was unreasonable because the district court failed to meaningfully address the factors set forth under 18 U.S.C. § 3553.

## II. ANALYSIS

### A. *District Court's Remand Order*

Davis challenges the district court's order on April 29, 2005, remanding her into custody. The government contends—without citation—that we have no jurisdiction to consider the issue because the remand order is not part of Davis's judgment of conviction or her sentence. The government alternatively asserts that the issue is moot. The government would be correct if Davis were seeking outright release, but she is not. *See* 18 U.S.C. § 3145(c) (granting independent avenue of appeal for custody orders). Davis argues the alleged erroneous remand order had a measurable effect upon issues which are subject to our jurisdiction. Davis claims that the remand order effectively constituted the imposition of a sentence without calculating the Guideline range, denying her purported rights of allocution and surrender, which is sufficient for our jurisdiction. *See* 18 U.S.C. § 3742(a).

Central to Davis's claim is her characterization of the district court's April 29 remand to custody order as a "sentence" rather than a mere revocation of bail. The right of allocution must be afforded prior to imposition of a sentence, but it does not accrue earlier. *See* Fed. R. Crim. P. 32(i)(4)(A). The same is true of the court's duty to calculate the Guideline range. *See United States v. Booker*, 543 U.S. 220, 264 (2005) ("The district courts, while not bound to

apply the Guidelines, must consult those Guidelines and take them into account *when sentencing*.") (citations omitted) (emphasis added). When the court ordered Davis be taken into custody on April 29, it did so contemplating Davis's return for the conclusion of her sentencing. Although the district court did not use the words "revocation of bail," that is what the court did by remanding Davis into custody as it was required to do. *See* 18 U.S.C. § 3143(a) (creating a post-conviction presumption of detention pending sentencing). Hence, Davis's right of allocution and the court's duty to consult the Guidelines were not at stake on April 29 because the court's incarceration order did not amount to a "sentence."[1] *Id.*

### B.  Enhancement for Obstruction of Justice

Davis challenges the district court's enhancement of her sentence for obstruction of justice under section § 3C1.1 of the Guidelines. A district court's determination that a defendant obstructed justice is a factual finding which we review for clear error. *United States v. Sutton*, 337 F.3d 792, 801 (7th Cir. 2003) (citation omitted); *United States v. Jackson*, 935 F.2d 832, 849 (7th Cir. 1991) (citations omitted); *United States v. Teta*, 918 F.2d 1329, 1332 (7th Cir. 1990) (citation omitted). We will not overturn such a

---

[1] As for the alleged violation of her purported right to surrender, Davis first made this assertion at oral argument, having not addressed it in her briefs. Although voluntary surrender is a common practice, it is not a right. Without even minimal briefing on the matter, and with no basis in the record to determine whether Davis did suffer a deprivation, we need not consider the issue. *See United States v. Turcotte*, 405 F.3d 515, 536 (7th Cir. 2005) ("In this circuit, unsupported and undeveloped arguments are waived.") (citations omitted); *Anderson v. Gutschenritter*, 836 F.2d 346, 349 (7th Cir. 1988) (citations omitted).

finding unless we are left with a "definite and firm conviction that a mistake has been committed." *United States v. Lanzotti*, 205 F.3d 951, 956 (7th Cir. 2000) (citation and quotations omitted). Davis argues that the false statements she made to investigators prior to her arrest did not substantially obstruct or impede the investigation, and that her unsuccessful attempts to influence scheme participants before she was arrested likewise lack the severity necessary for the enhancement to apply, a weak argument at best.

An enhancement for obstruction of justice should be applied if the defendant has "willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the course of the investigation" and the conduct relates to the defendant's offense of conviction. U.S. Sentencing Guidelines Manual § 3C1.1 (1997). Because the prohibited conduct of § 3C1.1 includes mere attempts to obstruct justice, a defendant need not be successful in order for the enhancement to apply. *See id.* Therefore it is no defense for Davis that the investigation eventually revealed her to be "Miss T" or that several scheme participants refused Davis's request to implicate Michael Wimpy.

A mere denial of guilt does not warrant an enhancement for obstruction. *See United States v. Fiala*, 929 F.2d 285, 289-90 (7th Cir. 1991). Rather, obstruction requires the defendant's conduct to significantly impede the progress of the investigation. *See United States v. Kroledge*, 201 F.3d 900, 908 (7th Cir. 2000) (citations omitted) (finding obstruction of justice enhancement warranted where defendant concocted a false set of facts to lead investigators to a witness whom defendant attempted to influence and defendant's concealed activity led directly to defendant's conviction for underlying crime).

Davis does not dispute that she was aware she was being investigated for tax fraud, and that she blamed the scheme on two dead men when agents interviewed her. Agent

Bielke testified that he had to conduct several interviews and perform a background check to determine whether Michael Wimpy was involved in the scheme. Moreover, the content of Davis's misinformation was that Wimpy was the preparer of Davis's false tax return, the crime for which she pled guilty.

Additionally Davis does not dispute that she contacted scheme participants and urged them to tell her made-up story to investigators. It is "clear that attempting to influence a witness to make false statements to investigating authorities qualifies as an obstruction of justice under § 3C1.1." *United States v. Sutton*, 337 F.3d 792, 801 (7th Cir. 2003) (citations omitted). The only argument Davis makes here is that her effort was "pathetic" as compared to other instances where we have found the enhancement was warranted for concerted conduct. Again, the enhancement does not apply by matter of degree of success; it is Davis's attempt that counts. There is no reason why Davis should not have received a sentence enhancement for obstruction of justice.

### C. Adjustment for Acceptance of Responsibility

Next, Davis claims she was entitled to a downward adjustment under § 3E1.1(a) of the Guidelines for acceptance of responsibility. We review a district court's factual finding regarding acceptance of responsibility for clear error. *United States v. Taliaferro*, 211 F.3d 412, 414 (7th Cir. 2000) (citation omitted). A defendant whose sentence was properly enhanced for obstruction of justice is presumed not to have accepted responsibility. *United States v. Partee*, 301 F.3d 576, 580-81 (7th Cir. 2002) (citation omitted). It is only under exceptional circumstances that a defendant who has received a sentence enhancement for obstruction of justice will be given a downward adjustment for acceptance responsibility. *United States v. Lallemand*,

989 F.2d 936, 938 (7th Cir. 1993) (citing application note 4 to section 3E1.1 of the Guidelines).

Davis claims hers is the exceptional case because she submitted to the court a statement entitled "Acceptance of Responsibility", in which she acknowledged her crimes, the harm they caused, and the need to minimize the impact of her actions. Davis also claimed that she wished to live a positive life as a responsible member of the community. Davis did express her contrition, but only *after* pleading guilty to the crime. *See United States v. Ewing*, 129 F.3d 430, 435-36 (7th Cir. 1997) (noting that timeliness of defendant's purported acceptance is relevant in the reduction inquiry). Davis has not presented any evidence that she negated the effect of her obstruction or otherwise facilitated the progress of the investigation, and her guilty plea, without more, will not carry the day for her. *See United States v. McIntosh*, 198 F.3d 995, 999 (7th Cir. 2000).

### D.  *Reasonableness of Davis's Sentence*

Finally, Davis claims her sentence is unreasonable because the district court did not adequately consider the factors set forth in 18 U.S.C. Section 3553(a). After *United States v. Booker*, 543 U.S. 220, 259-60 (2005), it became mandatory for district courts to consider the sentencing factors in § 3553(a). "Judges need not rehearse on the record all of the considerations that 18 U.S.C. § 3553(a) lists; it is enough to calculate the range accurately and explain why (if the sentence lies outside it) this defendant deserves more or less." *United States v. George*, 403 F.3d 470, 472-73 (7th Cir. 2005). Although a judge must articulate the factors supporting the sentence he will impose, "his duty 'to consider' the statutory factors is not a duty to make findings" where the material facts are not in dispute. *United States v. Dean*, 414 F.3d 725, 729-30 (7th Cir. 2005) (citation omitted).

Here Judge Clevert noted he was aware of his duty under
§ 3553(a) "to take into account multiple factors in imposing
a sentence." Without listing the factors specifically, the
court continued its colloquy with the § 3553(a) factors
clearly in mind, mentioning that Davis's sentence reflected
the impact of her crime, the deterrence of others, her family
situation, and her obstructive conduct. Before imposing
Davis's sentence, Judge Clevert concluded, "it is the
judgment of the Court after taking into consideration *all of
the factors* as set forth in Title 18 Section 3553(a)(2). . . ."
(emphasis added). The district court did not merely pay lip
service to the statutory factors but instead noted how
certain aspects of Davis's case fit under the statute. The
court was not required to make specific findings of fact.

Finally, a sentence within the Guidelines is presumed to
be reasonable. *United States v. Mykytiuk*, 415 F.3d 606, 608
(7th Cir. 2005). It is undisputed that Davis's sentence is
within that range, giving rise to the presumption of reason-
ableness. Because the district court properly weighed the
factors of § 3553(a) before stating independent reasons for
the sentence it imposed, we find no error in Davis's sen-
tence.

### III.  CONCLUSION

The district court acted properly by remanding Davis into
custody on May 29, 2005, and subsequently finding obstruc-
tion of justice and no acceptance of responsibility. Davis's
41-month sentence is reasonable, and for the foregoing
reasons, Davis's sentence is AFFIRMED.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*